## THE DOLLAR SAVINGS BANK *v.* UNITED STATES.

1. The ninth section of the Internal Revenue Act of 1866 subjects to the tax of five per cent. laid on the undistributed sum or sums made and added during the year to their surplus or contingent funds, by banks and savings institutions generally, such sum or sums, when made and added to such funds even by savings banks without stockholders or capital stock, and which do the business of receiving deposits to be lent or invested for the sole benefit of their depositors.

---

* 1 Wheaton, 333; see also The Mayor *v.* Cooper, 6 Wallace, 247.

2. A construction of a proviso to an act which makes the proviso plainly repugnant to the body of the act, is inadmissible.

3. The construction given to the Internal Revenue Act by commissioners of internal revenue, even though published in an Internal Revenue Record, is not a construction of so much dignity that a re-enactment of the statute subsequent to the construction having been made and published, is to be regarded as a legislative adoption of that construction; especially not when the construction made a proviso to an act repugnant to the body of the act.

4. By the Internal Revenue law the United States are not prohibited from adopting the action of *debt* or any other common-law remedy for collecting what is due to them. This is true on general principles.

5. Under the Internal Revenue Act of July 13th, 1866, "taxes may be sued for and recovered in the name of the United States in any proper form of action."

6. The requirement by statute on all banks to pay a tax of a certain sum, per cent., on all undistributed earnings made or added during the year to their contingent funds, is a charge of a certain sum upon the banks, and without assessment makes the banks a debtor for the sum prescribed.

ERROR to the Circuit Court for the Western District of Pennsylvania.

The United States brought an action of *debt* against The Dollar Savings Bank, in the court below, to recover certain internal revenue taxes, which the declaration alleged were due from it to the government. These taxes were asserted to have been authorized by an amendment contained in the ninth section of the Internal Revenue Act of July 13th, 1866,\* by which part of a prior Internal Revenue Act, the act, namely, of June 30th, 1864, was repealed, and in place thereof it was enacted:

"That there shall be levied and collected *a tax of five per centum on all dividends in scrip or money thereafter declared due,* wherever and whenever the same shall be payable, to stockholders, policy-holders, or depositors, or parties whatsoever, . . . *as part of the earnings, income, or gains* of any bank, trust company, savings institution, and of any . . . insurance company . . . in the United States or Territories, . . . and on all undistributed sums, or sums made or added during the year to their surplus or contingent funds; and said banks, trust companies, savings

---

\* 14 Stat. at Large, 138.

institutions, and insurance companies shall pay the said tax, and are hereby authorized to deduct and withhold from all payments made on account of any dividends or sums of money that may be due and payable as aforesaid, the said tax of five per centum. *And a list or return shall be made and rendered to the assessor,* . . . on or before the tenth day of the month following that in which any dividends or sums of money become due or payable as aforesaid; and said list or return shall contain a true and faithful account of the amount of taxes as aforesaid; and there shall be annexed thereto a declaration of the president, cashier, or treasurer of the bank, trust company, savings institution, or insurance company, under oath or affirmation, *in form and manner as may be prescribed by the commissioner of internal revenue,* that the same contains a true and faithful account of the taxes as aforesaid. And for any default in the making or rendering of such list or return, with such declaration annexed, the bank, trust company, savings institution, or insurance company making such default shall forfeit as a penalty the sum of $1000; and in case of any default in making or rendering said list or return, or of any default in the payment of the tax as required, or any part thereof, *the assessment and collection of the tax and penalty shall be in accordance with the general provisions of law in other cases of neglect and refusal.*

" *Provided,* That the tax upon the dividends of life insurance companies shall not be deemed due until such dividends are payable; *nor shall* the portion of premiums returned by mutual life insurance companies to their policy-holders, nor *the annual or semi-annual interest allowed or paid to the depositors in savings banks or savings institutions,* be considered as dividends."

The view of the government was that this act required a tax of five per cent. to be levied and collected, amongst other things, on sums added during the year by the Dollar Savings Bank, the defendant in the case, to its surplus or contingent fund, without regard to the character of the bank, or the nature and purpose of that fund.

The section above quoted, as the reader has observed, contains a requirement that each bank shall make a certain return, " in form and manner as may be prescribed by the commissioner of internal revenue, that the same contains a

true and faithful account of the taxes aforesaid." It appeared in this case that after the passage of the act in question, Mr. Rollins, the then commissioner of internal revenue, made, in February, 1867, a construction of it, so far as it affected banks of the character of the one now sued, and held that they were not required to pay a tax upon amounts which were added to their retained funds instead of being divided among their depositors, and that of course no return relating to any such subjects was required from such a bank.*

This action of Commissioner Rollins was repeated by his successor, Commissioner Delano, in 1870;† and it was reaffirmed and repeated by Commissioner Pleasanton, in 1871.‡

The Dollar Savings Bank, it seemed, had accordingly made no return during either of the years mentioned in the declaration, not being required to do so by the commissioner of internal revenue.

In the year 1872, the successor of Commissioner Pleasanton adopted a different construction of the act, and this action of debt was brought to recover the taxes which the declaration alleged should have been paid between June, 1866, and December, 1870, inclusive; and these taxes, thus alleged to be due, formed the subject-matter of this suit. The jury found a special verdict:

"We find that the Dollar Savings Bank is a banking institution created by the laws of the State of Pennsylvania, without stockholders or capital stock, and doing the business of receiving deposits to be loaned or invested for the sole benefit of its depositors; that the charter authorizes the *retention* of a contingent fund, accumulated from the earnings, to the extent of ten per centum of its deposits *for the security of its depositors;* that it has earned and added to the said contingent fund, or *undistributed sum,* from 13th July, 1866, to 31st December, 1870, $107,000 (the tax of five per cent. on its earnings having been paid prior to 13th July, 1866); that the earnings were carried to and added to the said contingent or *undistributed fund semi-*

---

* 5 Internal Revenue Record, 60.        † 11 Id. 73.        ‡ 13 Id. 73.

*annually*, on the first days of July and January in each year. And we find, if the court should be of opinion, on this state of facts, that the plaintiff is entitled to recover, a verdict for the United States for the sum of $5356, to which is to be added, if the court should be of opinion that plaintiff is entitled to interest on the semi-annual taxes, from the time they were due and payable, the further sum of $1100; but, if the court should be of opinion, on the said facts so found, that the plaintiff is not entitled to recover under the law, then we find for the defendant."

The court rendered a judgment in favor of the United States for the principal sum of $5356, with costs of suit, and this writ of error was taken.*

The errors assigned were:

1st. Holding that the act of Congress authorized the levy and collection of the tax.

2d. Holding that an action of debt was maintainable for the recovery of the tax.

No question was made in the court below as to whether *debt* was the proper form of action, nor any question except as to the liability of the savings bank to pay the tax.

*Mr. B. R. Curtis, for the plaintiff in error:*

1. *The act of Congress does not authorize the levy and collection of the tax in question upon the defendant.*

The decisions of the commissioners, Rollins and Pleasanton, were correct. They seem to have been founded upon this view of the law, that Congress intended to tax the net earnings of certain banking and other institutions named, whether those net earnings should be distributed to the stockholders in the form of dividends, or retained and added to the capital; and that in those cases in which Congress did not intend to tax the distributed earnings, they did not intend to tax the undistributed earnings; and as it is ex-

---

* The court gave no interest, because it was admitted that the savings bank was not reprehensibly in default, and that its refusal to pay the tax was induced by the inconsistent action and the conflicting opinions of the Internal Revenue Department.

pressly declared in the law, that sums paid to depositors in savings banks are not to be deemed dividends within the meaning of that word in the law, neither should the sums which the bank has lawfully omitted to pay to its depositors, and has held undistributed, not as an addition to the capital stock (such banks having no capital stock), but only for the security of its depositors in the future, be deemed taxable as such surplus.

It is important to note in this connection, that, while this power of the commissioners to prescribe what returns should be made by savings banks was in full force, and while the construction placed by the commissioners on the law was known by public promulgation, Congress passed the act of July 14th, 1870,* and in the fifteenth section used substantially the same language concerning the subject now in question as was contained in the act of 1866. The case, therefore, stands thus: Congress required the commissioner to prescribe what returns savings banks should make. This necessarily required him to put a construction on the law. He did so, and held that they were not required to return the sums held undistributed *solely* for the security of these depositors. After this practical construction had been made and acted on for nearly four years, Congress re-enacted the tax (though it was reduced in amount) in the same words which had received this practical construction.

It is a settled rule, that the re-enactment of a statute which had received a *judicial* construction in effect adopts that construction. And why not apply the same principle to a contemporaneous practical construction put upon the act by an officer expressly required to construe it?†

2. *An action of debt was not maintainable for the recovery of the taxes in question.*

This was an action at the common law. The United States has no common law;‡ but the thirty-fourth section of the Judiciary Act provides that the laws of the several

---

* 16 Stat. at Large, 256.

† Edwards's Lessee *v.* Darby, 12 Wheaton, 206.

‡ Wheaton *v.* Peters, 8 Peters, 658.

States shall be the rules of decision in the trial of actions at the common law.

Now, by the law of Pennsylvania, as also of many other States, as it existed in 1789, an action of debt will not lie to recover a tax authorized to be levied and collected by a statute, which statute affords a remedy for its assessment and collection.* The principle in all the decisions is, that where a statute creates a right, and provides a particular remedy by which that right may be vindicated, no other remedy than that afforded by the statute can be used.

Especially will no such action lie under the statute in question; because it expressly provides, that

"In case of any default in making or rendering said list or return, or of any default in the payment of the tax as required, or any part thereof, the assessment and collection of the tax and penalty shall be in accordance with the *general provisions of law in other cases of neglect and refusal.*"

Those other provisions here referred to are found in the act of July 13th, 1866.† They require the assessor to make lists; they point out what the lists are to contain; they authorize him at any time *within fifteen months* from the time of the passage of the act, or from the time of the delivery of the list to the collector, to make special additional lists; and these general or special lists are to be delivered by him to the collector, to stand as his warrant for the levy of the tax upon the property of the delinquent taxpayer, pursuant to the directions of the statute.

Further: Even if an action of debt could be sustained, according to the common law of Pennsylvania, or any common law, to recover taxes *duly assessed, duly notified and demanded*, it does not appear by the special verdict, nor is there any reason from the known facts even to conjecture, that

---

* Mayer *v.* Kirby, 14 Sergeant & Rawle, 165; Turnpike Company *v.* Brown, 2 Pennsylvania, 463; Turnpike Company *v.* Martin, 12 Pennsylvania State, 37.

† 14 Stat. at Large, 103, 104; see the section quoted 18 Wallace, 643, Dandelet *v.* Smith.

any one of these taxes ever was duly assessed. For aught that appears, the commissioners of internal revenue prior to December 1st, 1870, gave such instructions to the assessors that none of these taxes were assessed; and when, at the end of that time, a new commissioner promulgated new views as to the construction of the law, this action of debt was brought. Now, if there had been any attempt regularly to assess these taxes, by reason of an assumed mistake in the construction of the law under which assessments had been omitted, the assessor could not have gone back to the term of fifteen months before he delivered his last list to the collector. Yet, without any attempt to make such a corrected assessment, so far as appears, or, indeed, ever to assess regularly the taxes demanded in this suit, the court below has rendered a judgment for their full amount.

*Mr. C. H. Hill, Assistant Attorney-General, contra.*

Mr. Justice STRONG delivered the opinion of the court.

The facts found by the special verdict are that the plaintiff in error is a banking institution created by the laws of the State of Pennsylvania, without stockholders or capital stock, and doing the business of receiving deposits to be loaned or invested for the sole benefit of its depositors; that the charter authorizes the retention of a contingent fund accumulated from the earnings to the extent of ten per centum of its deposits for the security of its depositors; that the bank has earned and added to the said contingent fund, or undistributed sum, from July 13th, 1866, to December 31st, 1870, one hundred and seven thousand dollars; and that such earnings were carried to and added to said contingent or undistributed fund semi-annually, on the first days of January and July in each year.

Upon this state of facts, the first question presented is whether the act of Congress of July 13th, 1866, which was an amendment to the Internal Revenue law,* authorizes the

---

* 14 Stat. at Large, 138.

levy and collection of a tax upon the accumulated earnings carried to the contingent fund. It is very plain that the first intent of the act was to impose a tax upon all the earnings, income, or gains, of the institutions mentioned therein. The language of its one hundred and twentieth section is, "There shall be levied and collected a tax of five per centum on all dividends in scrip or money thereafter declared due, whenever and wherever the same shall be payable to stockholders, policy-holders, or depositors, or parties whatsoever, including non-residents, whether citizens or aliens, as part of the earnings, income, or gains of any bank, trust company, savings institution, and of any fire, marine, life, inland insurance company, either stock or mutual, under whatever name or style known or called in the United States or Territories, whether specially incorporated or existing under general laws; *and on all undistributed sum or sums made and added during the year to their surplus or contingent funds.*" This tax the banks, trust companies, savings institutions, and insurance companies are required to pay, and they are authorized to deduct it from all payments made on account of any dividends or sums of money that may be due and payable as aforesaid. It is, however, only so much of the tax as is levied upon dividends or sums of money due and payable to stockholders, policy-holders, or depositors, &c., which they are authorized to deduct. Thus it appears the tax is laid upon two subjects,—the one dividends or sums due and payable, and the other the undistributed surplus of gains or earnings carried to a surplus or contingent fund. These subjects, though together making up the entire net earnings, are distinct from each other; and they are thus treated throughout the section as well as throughout other sections of the act. If the portion of the act which we have quoted were all, it would not admit of a doubt that both these subjects—the dividends, or annual or semi-annual payments, and the sums added to the contingent fund—are made taxable.

It is argued, however, that savings institutions were relieved by the proviso to the section. That, of course, is to

be construed in connection with the section of which it is a part, and it is substantially an exception. It takes out of the operation of the body of the enactment that which otherwise would be within it. It restrains the generality of the previous provisions. Its language is: "*Provided* that the tax upon dividends of life insurance companies shall not be deemed due until such dividends are payable; nor shall the portion of premiums returned by mutual life insurance companies, nor the annual or semi-annual interest allowed or paid to the depositors in savings banks or savings institutions be considered as dividends." But so far as it relates to savings banks, the only subject of the proviso is the annual or semi-annual interest allowed or paid to the depositors. It makes no reference to the undistributed surplus which may be carried to a surplus fund. That it leaves as it was in the body of the section, subject to the tax therein imposed. And to us it appears quite plain that such was the intention of Congress. Had it been the purpose to exempt savings banks from liability to pay the tax on both the interest paid to its depositors and on all undistributed sums carried to the surplus fund, the plain mode of expressing such a purpose was to say in the proviso that such banks should be excepted from the operation of the section. If such was the purpose, why except them expressly from the operation of a part of the section only? Why take out one subject of taxation specifically, and leave the other unmentioned? And still more. If, as the plaintiff in error contends, it was intended that savings banks should pay no tax on either of the two subjects mentioned in the body of the section, why were such banks mentioned in the section at all? The broad construction of the proviso contended for makes it plainly repugnant to the body of the act, and it is, therefore, inadmissible.

Our attention has been called to the fact that in 1867, and again in 1870, the commissioners of internal revenue construed the proviso as exempting savings institutions from the tax upon all sums added to their surplus or contingent funds, and that the act of Congress of July 14th, 1870, which

reduced internal taxation, employed substantially the same language respecting savings banks as that contained in the act of 1866.   In view of this, the plaintiffs in error argue that Congress required the commissioner to prescribe what returns savings banks should make; that this made it his duty to put a construction on the law; that he did so, and held that such institutions were not required to return undistributed earnings carried to a surplus fund, and that after this practical construction had been made and acted upon more than three years, Congress re-enacted the tax, reduced in amount, in the same words.   Hence, it is inferred, the construction given by the commissioner was adopted.   It is, doubtless, a rule that when a judicial construction has been given to a statute, the re-enactment of the statute is generally held to be in effect a legislative adoption of that construction. This, however, can only be when the statute is capable of the construction given to it, and when that construction has become a settled rule of conduct.   The rule, we think, is inapplicable to this case.   In the first place, the decisions of the internal revenue commissioner can hardly be denominated judicial constructions.   That officer was not required by the law to prescribe what returns savings banks were required to make.   That was prescribed by the act of Congress itself, and he had no power to dispense with the requisition. There is, therefore, no presumption that his decisions were brought to the knowledge of Congress when the act of 1870 was passed.   And again, the construction he gave is an impossible one, for, as we have seen, it makes the proviso plainly repugnant to the body of the section.

We are constrained, then, to hold that the act of Congress does impose upon the plaintiffs in error the tax to recover which the present suit was brought.

The second error assigned is that the Circuit Court erred in holding that an action of debt is maintainable in that court for the recovery of the taxes.

We do not perceive that the question presented by this assignment was raised or even mentioned in the court below,

and it is not clear that it may first be raised here. But if it may, the answer must be that the taxes may be recovered in an action of debt brought in the Circuit Court.

The argument in support of the assignment of error is that the United States has no common law; that the thirty-fourth section of the Judiciary Act enacts that the laws of the several States shall be the rules of decision in the trial of actions at common law, of which debt is one; that the act of Congress which imposes the tax on savings banks provides a special remedy for its assessment and collection, and that it is a principle of the common law of Pennsylvania, that when a statute creates a right and provides a particular remedy by which that right may be enforced, no other remedy than that afforded by the statute can be used.

It must be conceded that in the section of the act,* which required savings banks to pay the tax, they are also required to render to the assessor or assistant assessor a list of the amount of taxes with a declaration under oath attached thereto, on or before the 10th day of the month following that in which any dividends or sums of money may be due and payable, and for any default in rendering such a list they are liable to a penalty. The act also declares that " in case of any default in making or rendering said list or return, or any default in the payment of the tax as required, or any part thereof, the assessment and collection of the tax and penalty shall be in accordance with the general provisions of law in other cases of neglect and refusal." What those general provisions are may be seen in other sections of the act which prescribe assessments, delivery thereof to the collectors, and distraint if necessary.

It must also be conceded to be a rule of the common law in England, as it is in Pennsylvania and many of the other States, that where a statute creates a right and provides a particular remedy for its enforcement, the remedy is generally exclusive of all common-law remedies.

But it is important to notice upon what the rule is

* Act of 1866, § 120.

founded. The reason of the rule is that the statute, by providing a particular remedy, manifests an intention to prohibit other remedies, and the rule, therefore, rests upon a presumed statutory prohibition. It applies and it is enforced when any one to whom the statute is a rule of conduct seeks redress for a civil wrong. He is confined to the remedy pointed out in the statute, for he is forbidden to make use of any other. But by the Internal Revenue law, the United States are not prohibited from adopting any remedies for the recovery of a debt due to them which are known to the laws of Pennsylvania. The prohibitions, if any, either express or implied, contained in the enactment of 1866, are for others, not for the government. They may be obligatory upon tax collectors. They may prevent any suit at law by such officers or agents. But they are not rules for the conduct of the State. It is a familiar principle that the King is not bound by any act of Parliament unless he be named therein by special and particular words. The most general words that can be devised (for example, any person or persons, bodies politic or corporate) affect not him in the least, if they may tend to restrain or diminish any of his rights and interests.* He may even take the benefit of any particular act, though not named.† The rule thus settled respecting the British Crown is equally applicable to this government, and it has been applied frequently in the different States, and practically in the Federal courts. It may be considered as settled that so much of the royal prerogatives as belonged to the King in his capacity of *parens patriæ*, or universal trustee, enters as much into our political state as it does into the principles of the British constitution.‡

It must, then, be concluded that the government is not prohibited by anything contained in the act of 1866 from em-

---

* Magdalen College Case, 11 Reports, 74; King *v.* Allen, 15 East, 333.

† 7 Reports, 32; Potter's Dwarris on Statutes, 151, 152.

‡ Commonwealth *v.* Baldwin, 1 Watts, 54; People *v.* Rossiter, 4 Cowen, 143; United States *v.* Davis, 3 McLean, 483; Same *v.* Williams, 5 Id. 133; Commonwealth *v.* Johnson, 6 Pennsylvania State, 136; United States *v.* Greene, 4 Mason 427; Same *v.* Hoar, 2 Id. 311; Same *v.* Hewes, Crabbe, 307.

ploying any common-law remedy for the collection of its dues. The reason of the rule which denies to others the use of any other than the statutory remedy is wanting, therefore, in applicability to the government, and the rule itself must not be extended beyond its reason. And we do not find that either in England or in Pennsylvania it has been held to be applicable. On the contrary, in England informations of debt, and exchequer informations for discovery and account, to recover duties on importations, have been of frequent occurrence, though the acts of Parliament have provided a different remedy for enforcing the payment. Numerous such cases are reported in Bunbury's Reports.* And in *United States* v. *Lyman*,† Judge Story held that debt might be maintained in the Circuit Court for Massachusetts to recover duties upon imported goods; a doctrine reasserted by this court in *Meredith* v. *United States.*‡

But all this is superfluous, for the act of Congress authorizes suits at law to recover unpaid taxes.§ It enacts as follows: "And taxes may be sued for and recovered, in the name of the United States, in any proper form of action, before any Circuit or District Court of the United States for the district in which the liability for such tax may have been or may be incurred, or where the party from whom such tax is due may reside at the time of the commencement of said action."

Nor is there anything in the objection that the taxes for which judgment has been recovered in this case had not been assessed. No other assessment than that made by the statute was necessary to determine the extent of the bank's liability. An assessment is only determining the value of the thing taxed, and the amount of the tax required of each individual. It may be made by designated officers or by the law itself. In the present case the statute required every savings bank to pay a tax of five per cent. on all undistributed earnings made, or added during the year to their

---

\* See pp. 155, 299, 300, 339; see also Comyn's Digest, title "Debt," A. 9; 1 Rolle, 383.

† 1 Mason, 432.        ‡ 13 Peters, 486.        § 14 Stat. at Large, 111.

contingent funds. There was no occasion or room for any other assessment. This was a charge of a certain sum upon the bank,* and without more it made the bank a debtor.

We think, therefore, the second assignment of error cannot be sustained.

JUDGMENT AFFIRMED.

Mr. Justice BRADLEY, with whom concurred Mr. Justice FIELD, dissenting:

I dissent from the judgment of the court, on the ground that an action will not lie for a tax of the kind in question in this case, unless it be first entered on the assessment-roll. The assessment-roll should be regarded as conclusive as to the persons or things liable to taxation. If it is not, if the matter is left open so that any person or corporation may be prosecuted for taxes at any time, it leaves the citizen exposed to many hazards, and to the mercy of prying informers, when the evidence by which he could have shown his immunity or exemption has perished. If an action of debt without an assessment can be brought, what is the limit of time within which it must be brought? To what statute of limitations is the government subject? It seems to me that the decision introduces a new principle in the system of taxation, dangerous to the rights of the citizen and the peace and security of society.

---

* Attorney-General *v.* ——, 2 Anstruther, 558.