## UNITED STATES *v.* WARRICK.

*(Circuit Court, D. New Jersey.   October 12, 1885.)*

1. INTERNAL REVENUE—NOTES USED FOR CIRCULATION AS MONEY.
    In an action under section 19 of the act of February 8, 1875, (18 St. 311,) in order to render the defendant liable it must be shown that he intended to put his notes in circulation as money and paid them out for that purpose, but in showing such intention, his declarations, when he paid out the notes is not the only proper evidence thereof, and it is not error to instruct the jury that paying out the notes, knowing that they would be used and circulated as money, is evidence from which they may infer the intention to pay them out for that purpose.

2. SAME—ASSESSMENT OF TAXES BY COMMISSIONER BEFORE SUIT.
    In such an action recovery may be had without an assessment of the taxes by the commissioner of internal revenue.

3. SAME—AMOUNT OF NOTES.
    That the notes were under the amount of one dollar each will not prevent their being taxable.

4. SAME—NOTES REISSUED TAXABLE.
    Where the notes when taken up are reissued, every such issue is a new issue thereof, and becomes a part of the amount of the notes so used for circulation, and subject to the tax.

In *Assumpsit.*

*A. Q. Keasbey,* U. S. Dist. Atty., for the United States.

*S. H. Grey,* for defendant.

BRADLEY, Justice.   A writ of error to the district court has been brought by each party in this case.   The plaintiff recovered a judgment for $463.31, but, being dissatisfied with the smallness of the amount, brought its writ to procure a reversal on that ground.   The defendant brought his writ for a reversal of the entire judgment. The action was by the United States to recover taxes alleged to be due from the defendant and his former partner, constituting the firm of Warrick & Stanger, for using and paying out their notes as currency.   The tax was claimed under and by virtue of the nineteenth section of the act entitled "An act to amend existing customs and internal revenue laws, and for other purposes," approved February 8, 1875, (18 St. 311,) which section is as follows: "That every person, firm, association, other than national bank associations, and every corporation, state bank, or state banking association, shall pay a tax of ten per centum on the amount of their own notes used for circulation and paid out by them."   Warrick & Stanger were glass manufacturers at Glassboro, Gloucester county, New Jersey, and in 1877 and subsequent years issued their notes in various amounts from five cents to five dollars each, in payment of wages due to their hands, which notes were in the following form:

Registered,

Warrick and
Stanger,

June 18, 1876,

Glassboro,

N. J.

GLASSBORO, June 18, 1876.

Five years after date we promise to pay the bearer at our store in Glassboro, Gloucester county, N, J.,

FIVE CENTS,

in lawful money of the United States, for value received. This promissory note will be taken by us, at or before its maturity, for the amount named herein, in payment of any debts due us.

[Signed]                    WARRICK & STANGER.

No.———

The notes were in printed form, except the date, number, and signature, were on bank paper, and had the appearance of notes intended for circulation from hand to hand. They were issued to the amount of $3,561.75, in various denominations, and when redeemed were continually reissued, until the amount paid out from November, 1877, to March, 1880, reached the sum of $67,474.51. The average amount outstanding at any one time was about $2,300. Evidence was given tending to show that these notes circulated in the community as money, being used, not only in purchasing goods at the store of Warrick & Stanger, but in transactions and dealings between other persons. The court below left it to the jury to determine whether the notes were in fact used for circulation as money in the community, and whether the defendants, in paying them out, knew that they would be so used. Among other things the judge, in his charge, used the following language :

"We cannot properly affirm that the true nature of the issue can only be determined by considering what was said by the maker when they were paid out. We must take notice how they were used by the workmen and the community with the knowledge of the defendant. We must ask, were they in fact used for circulation, and did the defendant know when he paid them out that they would be thus used? If he did, does not the law necessarily infer that he intended them to be thus used when he paid them? That is for the jury to say."

The defendants' counsel contended, and asked the judge to charge, that, in order to render the defendants liable to the tax, it should be shown that they intended to put the notes in circulation as money, and paid them out for that purpose; and that their declarations when they paid out the notes were the proper and only evidence of their intention. The judge charged that it must be shown that it was one of the purposes of the defendants, in paying out the notes, to put them in circulation; and he told the jury that in order to render a verdict for the plaintiff, they must be satisfied that the notes were paid out with the intent that they should be used for circulation; but declined to charge that the declarations of the defendants were the only evidence of such intention. As already shown, he charged that paying out the notes, knowing that they would be used and circulated as money, was evidence from which the jury might infer the intention to pay them out for that purpose. We do not well see how the defendants could have reasonably asked a more favorable charge.

Other specific charges on this branch of the case were requested, but it is not necessary to enumerate them. We are satisfied from the general character of the evidence, and from the form and appearance of the notes, that it was fairly left to the jury to determine whether the notes were used for circulation as money, and whether the defendant and his partner issued them for that purpose.

Another point taken by the defendants was that no recovery could be had in the action without an assessment of the taxes by the commissioner of internal revenue. The judge declined so to charge, and, under the ruling of the supreme court in *Savings Bank* v. *U. S.*, 19 Wall. 227, we suppose the judge was right.

Another point was that notes under the amount of one dollar were not taxable under the law. But we see nothing in the language of the act to lay a foundation for any such distinction. The suggestion that the United States, or the national banks, issued no currency under that amount with which the notes of the defendants could come in competition has very little pertinency in view of the clear terms of the act, and the suggestion may be met, if necessary to meet it, by the counter-suggestion that the government does issue specie currency of various denominations less than one dollar.

As to the amount of the tax, (supposing a tax to be due,) the plaintiff contended that it was 10 per cent. of the whole amount of notes paid out by the defendant and his partner, without regard to the fact that the same notes were reissued after being taken up and paid; while the defendant contended that the amount of tax was only 10 per cent. of the notes that were executed and used, no matter how often they may have been paid out. If the plaintiff was right, the whole amount of notes paid out was $67,474.51, and the tax amounted to $6,747.45. If the defendant was right, the amount of notes executed and used was only $3,561.72, and the tax amounted to only $356.17. The judge charged the jury in accordance with the views of the defendant, and a verdict was rendered for the latter sum, with interest. It is for this portion of the charge that the plaintiff has brought its writ of error. We have carefully examined the language of the act, and feel compelled to say that on this point we think the court below erred. We think that every issue of the notes, whether the original issue or a reissue, was a new issue thereof, and became a part of "the amount of their own notes used for circulation" by the defendants. If, instead of using old notes, already redeemed, the defendants had issued new ones, there can be no doubt that they would have been taxable. But how could it differ in the principle or reason of the thing whether they used old notes or new ones? A note redeemed ceases to be a note. It is of no more validity than a blank piece of paper. If it be reissued, it becomes a new note to all intents and purposes.

Other points were taken, which we do not think it necessary to examine in detail.

After a careful examination of the whole record, we think that none of the defendants' assignments of error are tenable; but that the plaintiff's assignment is well taken, and that for this cause the judgment must be reversed, and a new trial awarded.

The act of February 8, 1875, was passed as an amendment to the internal revenue laws, and is to be construed in connection therewith, as well as with the laws to provide a national currency. Hollister v. Zion Co-operative Mercantile Inst., 4 Sup. Ct. Rep. 263. Only such notes as are in law negotiable so as to carry title in circulation from hand to hand are taxable under the statute. It was no doubt the intention of congress in imposing this tax to provide against competition with the established national currency for circulation as money, but as it was not likely that obligations, payable in anything else than money, would pass beyond a limited neighborhood, no attention was given to such issues as affecting the volume of the currency, or its circulating value, and consequently obligations payable in goods are not included in the prohibitions of the act. Hollister v. Zion Co-operative Mercantile Inst., 4 Sup. Ct. Rep. 261, following U. S. v. Van Auken, 96 U. S. 366, and affirming Zion Co-operative Mercantile Inst. v. Hollister, 3 Pac. Rep. 87.—[ED.