UNITED STATES v. ATLANTIC COAST LINE R. CO.

(District Court, S. D. Georgia, S. W. D.   May 14, 1910.)

RAILROADS (§ 254*)—ACTION FOR PENALTY—DIRECTED VERDICT.

An action by the government against a railroad company to recover penalties for violations of the safety appliance act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) is a civil action, so that, the government having produced evidence to sustain each of the counts in its declaration, and the defendant having introduced no testimony, the government is entitled to a directed verdict.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 254.*]

The United States sued the Atlantic Coast Line Railroad Company, in 20 counts, to recover the sum of $100 in each count for 20 violations of what is commonly called the "Safety Appliance Act." The government produced evidence to sustain each of the counts in the declaration. The defendant introduced no evidence. A motion was made in behalf of the government for the direction of a verdict in its favor. Motion granted.

Robert E. Storrs, Asst. U. S. Atty., and Roscoe F. Walter, Special Asst. U. S. Atty.

Bennet & Branch and Talley & Heyward, for defendant.

SPEER, District Judge (orally). The law on this subject, as announced by Mr. Justice Harlan, in stating the conclusions of the court in Hepner v. United States, 213 U. S., on page 114, 29 Sup. Ct., on page 479, 53 L. Ed. 720, after summing up all the authorities, is:

"If, in a civil action to recover a penalty, the defendant is entitled, the evidence being undisputed, to have a peremptory instruction in his behalf, it is difficult to perceive why the government is not entitled to a peremptory

instruction in its favor, where the undisputed testimony left no facts for the jury to consider, but established, beyond all question and as matter of law, its right to judgment .for the prescribed penalty."

This is a civil case; otherwise, there would have been an indictment. The reasoning of the Supreme Court and its conclusion is controlling on my action. The evidence here is singularly clear, and absolutely uncontradicted on the 20 counts, and on the 20 counts the government has made out its case—that the railroad company did in fact run out cars upon which the safety equipment required by the act of Congress was in such condition that it could not have protected the operatives from the danger of death and mutilation, from which this benevolent law seeks to protect them. It is also in evidence, while the equipment was thus ineffective, that the slightest effort to repair the defects would have remedied them, and danger to life and limb would have been avoided. If the court neglects to enforce the great purpose which moves the framers of our laws to protect the people from the negligence or indifference of those in control of the powerful and dangerous engines of modern transportation, the benefits of those laws will be lost to the public for the present time, and possibly for the future. But, if the courts and the juries do their duty, the officers of the corporations, when they find there is a penalty which will be enforced, will very soon begin to respect the law, and hundreds of thousands who now labor in peril, or languish as the result of preventable wounds —the mashing and grinding of bones of the well and strong—will live out the normal period of their lives.

As I understand, there has been a wonderful decrease in such mutilations and in such deaths since this law went into effect. The almost incredible dangers to which we are exposed may be realized when I tell you that it is stated that our country suffers in loss of life and limb every year as much as the Northern and Southern armies lost in killed and wounded on the bloody field of Gettysburg. Now what would be the effect upon the minds of the people throughout the land if they knew that in the process of one business, that at one place each year, would meet contending forces 'that would put to death at once as many people as were killed and wounded at Gettysburg? Why, men the world around would be shocked in every fiber of our natures. Yet such are the facts; those are the results these laws are intended to protect. It is a great law; it is a benign law; it is intended to protect as fearless and as worthy, if sometimes careless, class of our people, careless because they are always in the presence of danger, as any nation can produce. The defendant will not be permitted here to whittle down these laws, or to defeat them by unnecessary technicalities.

These observations are perhaps not essential to this case. They are merely the views of the court. What is essential, though, is that I direct a verdict for the plaintiff for the full amount sued for.

NOTE.—Since this opinion was expressed, official reports indicate that in the year ending June 30, 1910, the railroads of the country have in their operation killed 3,804 and wounded 82,374. The loss at Gettysburg was for the Union 3,072 killed and 14,497 wounded, or 17,-569 in all; for the Confederates, the .killed there were 2,592 and the

wounded 12,709, in all 15,311. The aggregate killed and wounded of both armies was 32,880. So that death and wounds on the railroads of this country are in one year more than 2½ times as numerous as the loss on both sides from death and wounds at Gettysburg.