STATE OF CALIFORNIA v. UNITED STATES.

No. 7436.

Circuit Court of Appeals, Ninth Circuit.

Jan. 28, 1935.

U. S. Webb, Atty. Gen., and Ralph O. Marron, Deputy Atty. Gen., of California, for the State of California.

H. H. McPike, U. S. Atty., and Robert L. McWilliams, Asst. U. S. Atty., both of San Francisco, Cal., and James O. Tolbert, Sp. Asst. to U. S. Atty., of Washington, D. C.

Before WILBUR and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

This is a civil suit based upon the provisions of 45 USC §§ 1–16 (45 USCA §§ 1–16), commonly known as the Safety Appliance Acts. The case arose out of the operation of the State Belt Railroad, hereinafter referred to as the Belt Railroad, owned and operated by the state of California.

The cause was heard in the court below under a waiver of jury and on a stipulation of facts.

The Belt Railroad is about five miles in length. It receives from and delivers to common carriers engaged in interstate commerce railroad cars in interchange at San Francisco, switches cars to and from the wharves and industries there, and engages in the duties usually performed by terminal railroads.

On February 20, 1932, the Belt Railroad hauled over its line Western Pacific box car No. 16113. During the movement, the coupling and uncoupling apparatus on the "A" end of the car was out of repair and inoperative, as alleged in the appellee's complaint, thus necessitating that, in the language of the statute, men go between the ends of the cars in order to uncouple them.

The appellee contends that from the agreed statement of facts "there is no question but that the Safety Appliance Acts were violated had the Belt Railroad been privately owned and operated, and the question is whether by reason of its being owned and operated by the State of California any liability attaches to the State." In our view of the case, it is unnecessary for us to pass upon this contention.

It will be necessary for us to consider only one question, which, as phrased by the appellee, is as follows: "Is the State of California suable in the District Court of the United States for a violation of the Safety Appliance Acts?"

In the court below, the appellant raised the question of jurisdiction by a "special appearance and demurrer," asserting that the District Court had no jurisdiction over the appellant, in that the controversy is one between the United States and a state and is therefore within the exclusive original jurisdiction of the Supreme Court of the United States.

The appellant's demurrer was overruled. The court below rendered judgment against

the appellant and in favor of the appellee for $100 and costs.

In attacking the jurisdiction of the District Court, the appellant relies upon the provisions of 28 USCA § 341, which in part reads as follows: "The Supreme Court shall have exclusive jurisdiction of all controversies of a civil nature where a State is a party, except between a State and its citizens, or between a State and citizens of other States, or aliens, in which latter cases it shall have original, but not exclusive, jurisdiction."

This section is to be read in connection with article 3, § 2, cl. 2, of the Constitution, which is in part as follows: "In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be Party, the Supreme Court shall have original Jurisdiction."

Section 341 was first enacted by Congress as a part of section 13 of the Judiciary Act of 1789. 1 Stat. 73, 80, 81. It was re-enacted in its present form as section 687 of the Revised Statutes of 1873–1874, which section appears in the second edition of that compilation, published in 1878, at page 127.

On March 3, 1911, the same provision was again re-enacted, without change, as section 233 of the Judicial Code. 36 Stat. Pt. 1, 1156.

Finally, it was included in the United States Code of 1926 (28 USCA § 341), and there has been no change in its text since that time.

The appellee contends that this provision giving exclusive jurisdiction to the Supreme Court was repealed in part by the Safety Appliance Act, which was enacted in 1893 (27 Stat. 531, 532 [see 45 USCA § 1 et seq.]), amended in 1896 (29 Stat. 85 [45 USCA § 6]), and again in 1903 (32 Stat. pt. 1, 943, 944 [45 USCA §§ 8, 9, 10]), and again in 1910 (36 Stat. pt. 1, 299 [45 USCA §§ 11–16]). These enactments, it will be observed, all antedate the enactment of the Judicial Code in 1911, which vested in the Supreme Court exclusive jurisdiction of all actions in which a state is a party, with certain exceptions not involved here. It is clear, of course, that the latest enactment controls in case of a conflict between two enactments.

The appellee contends that section 13 of the Judiciary Act of 1789, as amended and revised (supra), giving exclusive jurisdiction to the Supreme Court, was repealed in part by the following jurisdictional provision, enacted in 1893, in the Safety Appliance Act: "Any common carrier engaged in interstate commerce by railroad using any locomotive engine, running any train, or hauling or permitting to be hauled or used on its line any car in violation of any of the preceding provisions of this chapter, shall be liable to a penalty of $100 for each and every such violation, to be recovered in a suit or suits to be brought by the United States district attorney in the district court of the United States having jurisdiction in the locality where such violation shall have been committed. * * *" Section 6, 45 USCA § 6.

Assuming that this section does repeal by implication those provisions of the then existing law giving exclusive jurisdiction to the Supreme Court (supra) where a state is a party, because inconsistent therewith, it is clear that the subsequent re-enactment in 1911 (36 Stat. 1156) of the original act without change would for the same reason repeal the intermediate statutes of 1893 and 1896 (27 Stat. 531 and 29 Stat. 85); that is, because the earlier statute is inconsistent therewith.

In the foregoing discussion, we have assumed, for the sake of argument, that the Safety Appliance Acts of 1893 and 1896 by implication repealed the section of the Judiciary Act of 1789, giving exclusive jurisdiction to the Supreme Court over actions in which the state is a party.

A study of the statutes involved, however, discloses that no such implied repeal of the Judiciary Act was intended by Congress.

In the first place, it should be observed that the doctrine of suppression, or repeal by implication, is not favored by the courts. The very passage in Lewis' Sutherland Statutory Construction (2d Ed.) vol. 1, § 247, pp. 464, 465, cited by the appellee in support of its argument on this point, contains the statements that "the intention to repeal * * * will not be presumed, nor the effect of repeal admitted, unless the inconsistency is unavoidable, and only to the extent of the repugnance," that " 'the law does not favor a repeal of an older statute by a later one by mere implication,' " and that "repeals by implication are not favored."

In Great Northern Railway Co. v. United States (C. C. A. 8) 155 F. 945, 960, 961, affirmed 208 U. S. 452, 28 S. Ct. 313, 52 L. Ed. 567, Judge Devanter, now a member of the Supreme Court, said: " * * * to establish a supersession or repeal of a statute

by implication, it is not sufficient to show merely that a later statute, making no mention of the particular subject of the first, employs language broad enough to cover some part or all of it; for, as words are sometimes employed with less than their largest literal meaning, it must also appear that the two statutes cannot stand together, reasonable purpose and operation being accorded to each. * * * [Many cases cited.] Or, as the same thing is at times differently expressed, a statute couched in clear and explicit terms is not overthrown by possible, but not necessary, implications flowing from after legislation." See, also, Gay v. Ruff, 292 U. S. 25, 37, 54 S. Ct. 608, 78 L. Ed. 1099, 92 A. L. R. 970; and Knapp v. Byram (D. C.) 21 F.(2d) 226, 227.

Particularly is this true when the doctrine of implied repeal is invoked against the sovereign state.

In United States v. Clausen (D. C. Wash.) 291 F. 231, 238, transferred to the Supreme Court, by this court, 293 F. 195, writ of error dismissed 266 U. S. 641, 45 S. Ct. 126, 69 L. Ed. 484, the District Court said:

"Under its war powers, Congress doubtless could confer upon a District Court authority to coerce a sovereign state and its officers, but that it so intended is not lightly to be concluded in the absence of positive and express congressional enactment, particularly so in view of the provisions of section 233 of the Judicial Code (section 1210, Comp. Stats. [28 USCA § 341, supra]), which provides: [Here the court quoted the provision transcribed above.]

"This statute is controlling of this question, despite the fact that the present suit may not be purely a controversy of a civil nature. The dignified treatment and consideration due a sovereign state form no small part of the reason that has actuated the law-making powers in making a state subject alone to the jurisdiction of the Supreme Court. An implied repeal of the law conferring, so far as the courts of the United States are concerned, exclusive jurisdiction on the Supreme Court of suits against a state, is not to be sanctioned, in view of the long-established recognition of this principle in the history of the doctrine of state's rights."

See, also, United States v. McIntosh (D. C.) 57 F.(2d) 573, 580.

Applying the foregoing principles to the statutes that we are now considering, we find various grounds for concluding that Congress intended no implied repeal of the Judiciary Act and the Revised Statutes, in so far as the exclusive jurisdiction of the Supreme Court is concerned, when the Safety Appliance Acts were passed.

In the first place, the last-named statutes apply in terms only to "any common carrier engaged in interstate commerce." The Supreme Court has already adjudicated that the operation of the Belt Railroad involved in the instant case has not caused the state of California to become a common carrier. In Sherman v. United States, 282 U. S. 25, 29, 51 S. Ct. 41, 75 L. Ed. 143, Mr. Justice Holmes said: "California has not gone into business generally as a common carrier, but simply has constructed the Belt Line as an incident of its control of the harbor—a State prerogative."

Obviously, the Safety Appliance Acts, which vest jurisdiction in the District Courts and which are made specifically applicable to common carriers, cannot be construed—as to a state that has been held not to be a common carrier—as repealing prior statutes giving the Supreme Court exclusive jurisdiction over controversies where the state is a party.

In an effort to escape from the effect of the Sherman Case, supra, on the question of "State prerogative," the appellee seeks to distinguish between "State prerogative" and "State sovereignty." As we read the authorities, the distinction is without a difference as far as the question now before us is concerned. Aetna Co. v. Bramwell (D. C.) 12 F.(2d) 307, 309; 6 Words and Phrases, First Series, 5518; 3 Bouvier Law Dict. (3d Rev.) p. 2670.

Furthermore, there is abundant authority for the proposition that a statute should not be construed to apply against the sovereign unless the enactment refers to the sovereign in specific terms.

In Dollar Savings Bank v. United States, 19 Wall. (86 U. S.) 227, 239, 22 L. Ed. 80, the court said: "It is a familiar principle that the King is not bound by any act of Parliament unless he be named therein by special and particular words. The most general words that can be devised (for example, any person or persons, bodies politic or corporate) affect not him in the least, if they may tend to restrain or diminish any of his rights and interests. He may even take the benefit of any particular act, though not named. The rule thus settled respecting the British Crown is equally applicable to

this government, and it has been applied frequently in the different States, and practically in the Federal courts. It may be considered as settled that so much of the royal prerogatives as belonged to the King in his capacity of parens patriæ, or universal trustee, enters as much into our political state as it does into the principles of the British constitution." See, also, United States v. Herron, 20 Wall. (87 U. S.) 251, 257, 263, 22 L. Ed. 275; Guarantee Co. v. Title Guaranty Co., 224 U. S. 152, 155, 32 S. Ct. 457, 56 L. Ed. 706; In re Fowble (D. C.) 213 F. 676, 679, 680; Villere v. United States (C. C. A. 5) 18 F.(2d) 409, 53 A. L. R. 571, certiorari denied 275 U. S. 532, 48 S. Ct. 29, 72 L. Ed. 410; Wechsler v. United States (C. C. A. 3) 27 F.(2d) 850, 851.

The appellee seeks to escape the application of the foregoing doctrine by contending that "the principle that a sovereign is not brought within the terms of a statute unless named therein applies only to the enacting sovereign."

We cannot agree with this view. In United States v. Hoar, 26 Fed. Cas. 329, 330, No. 15,373, Mr. Justice Story had before him the sole question of "whether the United States are barred of their suit by the statutes of limitations of Massachusetts." The learned jurist there said:

"Now, I think, it may be laid down as a safe proposition, that no statute of limitations has been held to apply to actions brought by the crown, unless there has been an express provision including it. For it is said, that, where a statute is general, and thereby any prerogative, right, title, or interest is divested or taken from the king, in such case the king shall not be bound, unless the statute is made by express words to extend to him. * * *.

"But, independently of any doctrine founded on the notion of prerogative, the same construction of statutes of this sort ought to prevail, founded upon the legislative intention. Where the government is not expressly or by necessary implication included, it ought to be clear from the nature of the mischiefs to be redressed, or the language used, that the government itself was in contemplation of the legislature, before a court of law would be authorized to put such an interpretation upon any statute. In general, acts of the legislature are meant to regulate and direct the acts and rights of citizens; and in most cases the reasoning applicable to them applies with very different, and often contrary force to the government itself. It appears to me, therefore, to be a safe rule founded in the principles of the common law, that the general words of a statute ought not to include the government, or affect its rights, unless that construction be clear and indisputable upon the text of the act."

The greater part of the second paragraph of the foregoing excerpt was quoted with approval by Mr. Chief Justice Fuller in Stanley v. Schwalby, 147 U. S. 508, 515, 13 S. Ct. 418, 37 L. Ed. 259.

Again, in New York v. Irving Trust Co., 288 U. S. 329, 331, 53 S. Ct. 389, 390, 77 L. Ed. 815, the Supreme Court, having before it section 57n of the Bankruptcy Act, as amended in 1926 (11 USCA § 93 (n), said: "It is admitted here, that as the United States and the States are not mentioned in the limitation of section 57, they are not bound thereby."

The final question to be determined is whether the suit before us is of "a civil nature."

We need not dwell on this point, since the appellee admits that "this is a civil suit," and the repeated decisions of the Supreme Court and of other federal courts leave the matter beyond a peradventure of a doubt.

In Chicago, B. & Q. Ry. v. United States, 220 U. S. 559, 577, 578, 31 S. Ct. 612, 617, 55 L. Ed. 582, the Supreme Court had before it the same statutes that we are here considering. In that case, Mr. Justice Harlan said: "In effect, the contention is that the present action for a penalty is a criminal prosecution, and that the defendant cannot be held guilty of a crime when it had no thought or purpose to commit a crime, and endeavored with due diligence to obey the act of Congress. This contention is unsound, because the present action is a civil one. It is settled law that 'a certain sum, or a sum which can readily be reduced to a certainty, prescribed in a statute as a penalty for the violation of law, may be recovered by civil action, even if it may also be recovered in a proceeding which is technically criminal.'" See, also, United States v. Regan, 232 U. S. 37, 48, 34 S. Ct. 213, 58 L. Ed. 494; United States v. C., B. & Q. R. R., 237 U. S. 410, 411, 413, 35 S. Ct. 634, 59 L. Ed. 1023; United States v. Louisville & Nashville R. Co. (C. C. A. 6) 167 F. 306, 308; United States v. Illinois Cent. R. Co. (C. C. A. 6) 170 F. 542, 544, 545; United States v. Atlantic Coast Line R. Co. (D. C.) 182 F. 284, 285; United States v. Minne-

apolis, St. P. & S. S. M. Ry. Co. (D. C.) 235 F. 951–953.

Accordingly, we hold that the court below erred in overruling the demurrer filed by the appellant, and in assuming jurisdiction of the cause.

Judgment reversed, and the District Court is directed to dismiss the action.