[Civ. No. 11290.   First Appellate District, Division One.—May 23, 1940.]

ASSOCIATED BREWERS DISTRIBUTING CO. (a Corporation), Respondent, v. HARRY B. RILEY, State Controller, et al., Appellants.

Earl Warren, Attorney-General, H. H. Linney and James J. Arditto, Deputies Attorney-General, for Appellants.

Laurence W. Beilenson and William Berger for Respondent.

KNIGHT, J.—Plaintiff brought this action against the State of California, its controller and its treasurer, to recover excise beverage taxes amounting to $1,085.50, levied by the state board of equalization on an importation of alcoholic liquors pursuant to the provisions of the state Beverage Tax Act of 1933 (Stats. 1933, p. 625), and paid by plaintiff under protest. Defendants demurred to the complaint upon the ground that it failed to state facts sufficient to constitute a cause of action or to entitle plaintiff to the relief sought, and the demurrer was overruled. Thereupon defendants filed an answer, and on plaintiff's motion judgment on the pleadings was entered in plaintiff's favor. From said judgment defendants prosecute this appeal.

The beverage upon which the tax was imposed consisted of 49,341 gallons of beer and ale. It was manufactured in a foreign country, and imported into the United States and into the State of California during the four months immediately preceding February, 1934, by parties unknown to respondent. Thereupon it was abandoned to and seized by the United States government for failure to pay the customs duties thereon, following which the government sold the liquor at public auction, in Los Angeles, in conformity with the requirements of federal statutes. Respondent was the purchaser at the sale, but did not report the purchase to the state board of equalization as required by the provisions of the Beverage Tax Act; and two years or more later said board assessed the excise tax on said liquor, which respondent paid under protest.

The pertinent provisions of the act of 1933 are the following: (Sec. 5) ''An excise tax is hereby imposed on all beverages [specified in the act, including beer and ale] sold by a manufacturer at the rate of sixty-two cents for every barrel containing not more than thirty-one gallons . . . '' (Sec. 1) ''(c) 'Manufacturer' means every person who, within the State of California, produces, brews, ferments or manu-

factures a beverage as herein defined, or who, in the case of a beverage produced, brewed, fermented or manufactured outside of the State of California, is the first in possession thereof within the State after completion of the act of importation. (d) 'Sale' means and includes any sale, exchange, barter or other act whereby the title to a beverage is transferred for a consideration, from a manufacturer, 'on sale' licensee or 'off sale' licensee as herein defined, to any other person and the words 'sell' or 'sold' mean and include the act of making any such 'sale'.'' (Sec. 5) " . . . It shall be presumed, for the purposes of this act, that all beverage produced, brewed, fermented or manufactured outside of this State and imported into this State by any manufacturer or delivered to such manufacturer here, has been sold by such manufacturer unless he shall establish to the satisfaction of the board that such beverage is still in the ownership and possession of such manufacturer, or, prior to the termination of such ownership or possession, has been lost through evaporation, leakage, spillage or destruction by the elements. . . . ''

■ The present controversy arises over the question of whether under the facts stated respondent was ''the first in possession . . . within the State after completion of the act of importation'', within the meaning of said act. According to the allegations of the complaint the action was brought upon the theory that because the United States government seized and sold the liquor for unpaid customs duties, it was the first in possession; and evidently such was the position taken by respondent before the trial court; but on this appeal its major contention is that the unknown importer was first in possession. With respect to respondent's primary contention, it is well settled that under no circumstances may a state constitutionally impose taxes against the United States while it is engaged in a governmental function; and beyond question the enforcement of the customs laws and regulations through duly constituted agencies is the exercise of a purely governmental function. Those fundamental doctrines have long since been firmly established by the Supreme Court of the United States, and it must be presumed that the legislature had them in mind when it framed the law imposing an excise tax on imported liquors, and that by employing the terms ''manufacturer'' and ''first in possession'' it intended to lay the tax on a taxable person. Before it could be held that it was the legislative intent to include the federal gov-

ernment within those terms, it would be necessary to assume that the legislature enacted a tax measure which obviously, to a large extent, would be not only fruitless in its results and unenforceable in its operation, but also violative of the constitutional inhibitions; and of course we have no right to indulge in such assumption.

Respondent points out that tax laws must be strictly construed against the taxing power, and it is argued therefore that since the clause of the act under consideration contains no exceptions, it must be held to include the federal government, regardless of the inability of the state to collect the tax imposed thereby from the government. The established rule is, however, that a sovereign power, in this case the federal government, shall not be deemed to be included within the general language of a statute—that unless special words are used indicating a contrary intent, it must be presumed that the statute was not designed to operate against the government. (*Dollar Sav. Bank* v. *United States,* 86 U. S. 227, 239 [22 L. Ed. 80].)

Respondent's alternative contention that the unknown importer was first in possession is based upon the theory that although admittedly the liquor was in the lawful physical possession of the government from the moment it arrived at the port of entry of the United States until it was actually delivered to respondent following the government sale, the legal title thereto remained in the unknown importer up to the time of its abandonment to the government for nonliquidation of the customs duties, and that, therefore, by virtue of such ownership it must be deemed that the unknown importer "had possession" of the liquor within the meaning of the act up to the time of such abandonment. We are unable to sustain this theory. In its final analysis it amounts to this: That inasmuch as the unknown importer, as the owner of a property right in the liquor up to the time of the abandonment, would have been *entitled to the possession* thereof at any time up to the abandonment *if* he had liquidated the customs duties, he must be deemed to be the "first *in* possession" within the state within the meaning of the clause of the act under consideration. There is a vast difference, however, between being first entitled to possession, and being "first *in* possession"; and therefore, since in framing the law the legislature saw fit to employ the term "first *in* pos-

session'', we are in full accord with appellants' view that it thereby contemplated a physical possession within the state by a taxable person, and not a theoretical or constructive possession based on a fiction of law. As suggested by appellants, if the lawmakers had intended that the tax on imported liquors should in all cases be assessed against the importer, they could have easily so worded the act; and it is plain to be seen that one of the main reasons it was worded so as to fasten liability for its payment on the ''first in possession . . . after completion of the act of importation'', rather than upon the importer, was because not until imported goods are released from the government's possession is the state in a position to impose the excise tax or to exercise the power of seizure and sale necessary to enforce its payment.

In support of its alternative position respondent relies upon the early case of *Conard* v. *Pacific Ins. Co.,* 31 U. S. 262 [8 L. Ed. 392], wherein the government sought to compel a transferee of certain imported goods then in the possession of the government awaiting payment of customs duties, to pay not only the duties on the particular goods transferred, but also certain sums of money claimed by the government to be due from the transferor on the importation of other goods. In deciding against the government's demand, and by way of clarification of an earlier decision, the court went on to say in effect that if the importer ''has the general right and property in the goods, that right draws after it a constructive possession''; and that the possession taken by the government upon the arrival of the goods at the port of entry for the purpose of maintaining its lien for unliquidated customs duties, may be properly deemed not so much an exclusive possession as a concurrent or mixed possession, for the joint benefit of the importer and of the United States, which does not affect the importer's right to immediate possession upon the discharge of the lien. In other words, the court held merely that possession by the government of imported goods while awaiting liquidation of customs duties does not destroy the owner's property right in the imported goods; and that upon such liquidation he *is entitled* to possession. Here, however, as already pointed out, the language of the statute is: ''first in possession . . . within the State after completion of the act of importation'', which, when

considered in the light of the other provisions of the act and its manifest intent and purpose, clearly implies a physical possession after release by the government, and excludes any theory of a possession based upon a fiction of law while the goods are in actual possession of the government.

In a supplementary brief respondent cites several federal decisions interpreting the word "importation" as used in the United States customs laws to mean that the act of importation is complete the moment the foreign goods arrive at the port of entry in the United States. But even though such interpretation were to be accepted here, rather than the one contended for by appellants, namely, that under our statutes the act of importation is not complete until the discharge of the goods by the federal government, respondent could not escape the responsibility for the payment of the tax because under either interpretation it was "first in possession . . . [other than the federal government, which is not taxable] after completion of the act of importation".

For the reasons stated, we conclude that the complaint in its present form fails to state a cause of action; and since no suggestion is made that additional facts are available which if pleaded would alter the situation, it is ordered that the judgment be and the same is hereby reversed with directions to sustain appellants' demurrer to the complaint without leave to amend, and thereupon to enter judgment in favor of appellants.

Peters, P. J., and Ward, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 22, 1940.