## BOARD OF LIQUIDATION OF CITY OF NEW ORLEANS v. UNITED STATES ex rel. WARNER et al.

### (Circuit Court of Appeals, Fifth Circuit. March 5, 1901.)

### No. 964.

1. FEDERAL COURTS—ANCILLARY JURISDICTION—MANDAMUS.

A federal court has jurisdiction, as ancillary to an action therein in which a judgment was rendered against the city of New Orleans, to award a writ of mandamus against the board of liquidation of the city debt to compel such board to pay or fund the judgment as required by the state statutes. Such jurisdiction is not affected by the fact that the board was not a party to the principal suit, since it is a department of the municipal government created by statute, and charged with the sole duty of liquidating the indebtedness of the city.[1]

2. SAME.

The jurisdiction of a federal court to award a writ of mandamus is not dependent on the laws or practice of the state, but is derived from the federal statute originally section 14 of the judiciary act of 1789, and now Rev. St. § 716.

3. MUNICIPAL CORPORATIONS—NEW ORLEANS—INDEBTEDNESS FUNDABLE UNDER STATUTE.

Warrants issued by the city of New Orleans under a contract made in 1876 constitute floating debt claims, within the terms of legislative act No. 67 of 1884, which provides that the board of liquidation of the city debt "is hereby authorized and required, and it is made the duty of said board, to retire and cancel the entire debt of the city of New Orleans now in the form of executory judgments and registered, * * * and that which hereafter may become merged into judgments and likewise registered, except the floating debt or claims created for and against the year 1879 and subsequent years; that it is the full intent and meaning of this act to apply solely the privileges thereof to * * *, and to such floating debt or claims against said city for 1878 and previous years, merged and to be merged into executory judgments." Such provisions are, moreover, mandatory, and vest the board with no discretion to refuse to pay or fund, as provided in the act, any judgment rendered on a claim embraced within its terms.

4. SAME—JUDGMENTS.

The New Orleans funding act, passed as part of Act No. 110 of 1890, and ratified by the constitutional amendment adopted in 1892, appropriates the proceeds of the sale of $10,000,000 of constitutional bonds to the payment of judgments and the outstanding bonds of the city "matured or subject to be called." *Held*, that the board of liquidation, charged with the duty of administering the fund, could not defend against an application for a writ of mandamus to require it to pay or fund a judgment fundable under such law on the ground that the bonds remaining in its hands were required to retire outstanding unmatured bonds not shown to be subject to call, such bonds not being within the terms of the act, and, even if they were, having no right of precedence over judgments.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

The following is the opinion of the circuit court (SWAYNE, District Judge):

It appears from the undisputed facts in this case that the relators lately recovered judgments against the city of New Orleans for considerable

[1] Supplementary and ancillary proceedings and relief, see note to Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 195.

108 F.—44

amounts, based on drainage warrants issued by the city in discharge of the consideration of a contract of purchase and compromise entered into between it and Warner Van Norden, transferee of the Mississippi & Mexican Gulf Ship-Canal Company, on the 7th day of June, 1876; that writs of fi. fa. were issued on the judgments, which were returned nulla bona, prior to the filing of the petition herein; and that the judgments have been registered in the office of the comptroller of the city, under the provisions of legislative act No. 5 of 1870. The relators have brought this proceeding praying for the issuance of a writ of mandamus for the purpose of compelling the board of liquidation of the city debt to fund their judgments. Their claim to relief is based on the provisions of various articles of the constitution and acts of the legislature of the state. By article 254 of the constitution of 1879, the general assembly was directed at its next session after the adoption of the constitution to enact such legislation as might be proper to liquidate the indebtedness of the city of New Orleans, and apply its assets to the satisfaction thereof. In obedience to this mandate, the legislature at its next session passed Act No. 74 of 1880, which authorized the city to issue 3 per cent. bonds in exchange for the unbonded valid indebtedness of the city not in judgment. At the same session, Act No. 133 was passed, which created a board of liquidation, composed of six citizens, giving them exclusive control of all matters relating to the bonded debt of the city. The third section of the act authorized and empowered the board to retire and cancel the entire valid debt of the city of New Orleans, except the floating debt created prior to the date of the act, and for this purpose required the city to issue $10,000,000 of its bonds, to be used by the board to take up such indebtedness. This section of the act was subsequently amended by Act No. 67 of 1884, in the following language: "Be it enacted that section 3 of Act 133, approved April 10, 1880, be amended and re-enacted so as to read: That the said board of liquidation of the city debt be, and it is hereby authorized and required, and it is made the duty of said board, to retire and cancel the entire debt of the city of New Orleans now in the form of executory judgments, and registered, under the provisions of Act No. 5 of 1870, and that which hereafter may become merged into judgments and likewise registered, except the floating debt or claims created for and against the year 1879 and subsequent years; that it is the full intent and meaning of this act to apply solely the privileges thereof to executory judgments at present rendered against said city and to such floating debt or claims against said city for 1878 and previous years merged and to be merged into executory judgments, whether absolute or rendered against the revenues of any particular year or years previous to the year 1879; that for the purpose of retiring and cancelling said judgment debt the said board is authorized and required to sell the bonds to be issued under this act at not less than par value and apply the proceeds thereof to the payment of the said judgment as above specified, or issue said bonds in exchange for said judgments." These enactments seem to have remained in abeyance until 1890, when, by joint resolution No. 110 of that year, another funding act was passed, substantially of the same character as that of 1884, and submitted to the people for ratification by a constitutional amendment, which was adopted in 1892. The third section of this act, so ratified, provides that the $10,000,000 of bonds therein required to be issued shall be sold by the board of liquidation, and the proceeds deposited to the credit of a fund to be called the "Bond Sale Fund," "which said fund shall be used solely and exclusively for the purpose of retiring by payment all said now outstanding valid bonds of the city of New Orleans, matured or subject to be called, including the certificates or bonds issued under the fourth section of the Act No. 58 of 1882, and including judgments now or hereafter rendered on floating debt claims prior to 1879, entitled to be funded under Act No. 67 of 1884." The board of liquidation admits that of the $10,000,000 of bonds issued under these funding laws there remain in its hands, unsold, bonds to the amount of $991,500, applicable to the payment and retirement of the bonded and judgment indebtedness of the city, but denies that the relators are entitled to the relief prayed for in their petition. The defenses set up in the answer may be stated under the following heads: First. That this is an original

proceeding for a mandamus, not ancillary to the suit in which the judgments of relators were recovered, of which the court has no jurisdiction. Second. That the judgments of the relators are not based on floating debts or claims against the city, entitled to be paid under any of the said funding laws. Third. That the funding of said judgments is discretionary with the board of liquidation, and that it cannot be coerced by the courts. Fourth. That the board is in duty bound to retain enough of said bonds to meet all outstanding unmatured bonds of the city,—this on the theory that the bonded debt is entitled to priority over the judgments.

None of these defenses are, in my opinion, well pleaded. The objection to the jurisdiction is based upon the theory that the present proceeding, although it seeks to enforce a remedy provided by statute for the payment of judgments against the city, is an original suit, not ancillary to the relators' judgments, because it is brought against the board of liquidation, which, it is claimed, is a third person, entirely distinct from the city. The city and board of liquidation are, no doubt, for certain purposes, separate corporations, but it does not follow that the board is not a part of the municipal government of the city of New Orleans. Its only function under the law creating it is that of a statutory trustee to fund the debt of the city, and to receive and disburse the revenues applicable thereto. But, in my opinion, it is not necessary to define the true relation existing between the board and the city. It is enough, for the purposes of this case, that the relators are entitled to obtain satisfaction of their judgments in the manner provided by these funding laws. The right to a mandamus against one corporation charged by statute with the payment of a judgment against another has the direct sanction of the supreme court of the United States in the case of Labette County Com'rs v. U. S., 112 U. S. 221, 5 Sup. Ct. 109, 28 L. Ed. 699. Says Justice Matthews in this case: "The objection that the circuit court had no jurisdiction to issue its mandamus to the plaintiffs in error is based upon the supposition that, because they are not parties to the judgment against Oswego township, and are not officers or representatives of that municipal corporation, but are officers of the county of Labette, the proceeding against them is the exercise of an original jurisdiction, which does not belong to that court. It is quite true, as it is familiar that there is no original jurisdiction in the circuit court in the mandamus. * * * But it does not follow, because the jurisdiction in mandamus is ancillary merely, that it cannot be exercised over persons not parties to the judgment sought to be enforced. An illustration to the contrary is found in that class of cases of which Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145, is an example."

There seems to be no foundation for the further contention made by the board that the circuit court of this district has no jurisdiction to issue the writ of mandamus in any case, because it has not been shown that the remedy was adopted from the state practice by the practice act of 1872, or any general order of this court. The writ was authorized by the fourteenth section of the original judiciary act of 1789, now section 716 of the Revised Statutes, and is not derived from any practice act of the state. Bath Co. v. Amy. 13 Wall. 244, 20 L. Ed. 539; Riggs v. Johnson Co., 6 Wall. 167, 18 L. Ed. 768; Rosenbaum v. Bauer, 120 U. S. 450, 7 Sup. Ct. 633, 30 L. Ed. 743.

The contention that the drainage warrants upon which the judgments of the relators are based, which were issued under the contract made by Warner Van Norden with the city of New Orleans in 1876, do not constitute a claim against the city, or form part of the floating debt of the city entitled to be funded under Act No. 67 of 1884, is equally untenable. The debts upon which these judgments were rendered necessarily originated under the contract of 1876, and the judgments themselves fix the date when the debts or claims represented by the warrants became due by allowing interest from June 6, 1876. That the warrants became claims when issued, admits of no doubt. Payment not being provided for by the city, they were floating debt claims, and, as such, are included within the class of indebtedness fundable under the law. Duchenne v. Board, 51 La. Ann. 1142, 26 South. 55; People v. Wood, 71 N. Y. 374.

The argument that the indebtedness represented by the warrants is not a claim, or a floating debt claim against the city, intended to be funded by

the lawmaker, because it had never been recognized and carried on the books of the city as a liability, is supported by neither reason nor authority. It is enough that these funding laws are so written as to include that indebtedness in express terms.

But it is contended, admitting all this to be true, that it is entirely discretionary with the board whether it will fund relators' judgments or not. I have carefully examined the various statutes defining the powers of the board, and find no provision of the law tending to support this proposition. Act No. 67 of 1884 is not, in any sense, a directory or permissive statute, but it is in the highest degree mandatory. The language of the act is, "That the board of liquidation of the city debt be, and is hereby, authorized and required, and it is made the duty of said board, to retire and cancel the entire debt of the city of New Orleans," etc. But, even if the language of the statute granting authority to the board had been permissive in form, it would be treated, on principle, as mandatory in fact. Says the supreme court in Supervisors of Rock Island Co. v. U. S., 4 Wall. 446, 18 L. Ed. 423: "The conclusion to be drawn from the authorities is that, where power is given to a public officer, whenever the public interest or individual rights call for its exercise, the language, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depositary to meet the demands of right, and to prevent a failure of justice." The board of liquidation, being without discretion to refuse to fund the relators' judgments, its action is clearly subject to judicial review. Creole Steam Fire-Engine Co. v. City of New Orleans, 39 La. Ann. 981, 3 South. 177. Whether a judgment is fundable is necessarily an issue in all proceedings for mandamus in cases of this character, to be determined by the court in the same manner as the other issues. Nelson v. St. Martin's Parish, 111 U. S. 716, 4 Sup. Ct. 648, 28 L. Ed. 574.

The only other question requiring consideration is whether the board of liquidation has the right to retain a sufficient amount of these bonds to satisfy the prior writs of mandamus granted in the suits of Mrs. Fisher et al. and Mrs. Wilder et al., and also a sufficient amount to meet certain outstanding unmatured bonds of the city, which it is claimed are fundable. I understand that the relators' attorneys concede that enough bonds should be reserved to satisfy these prior writs, but deny the authority of the board to retain any bonds to refund bonds that are not yet due. The contention of the relators as to the unmatured bonds is correct. The funding act passed as part of Act No. 110 of 1890, which was ratified by the constitutional amendment adopted in 1892, appropriates in express terms the proceeds of the sale of the $10,000,000 of constitutional bonds to the payment of judgments and the outstanding bonds of the city, "matured or subject to be called." As it appears that all the outstanding bonds are unmatured, and it does not appear that any are subject to be called, or have been called, they are necessarily excluded from the benefit of the funding laws. Even if this were not so, I find nothing in these laws giving bonds a priority over judgments in the application of the proceeds of the sale of constitutional bonds, and the court can give none. When a creditor has accepted the offer to fund, and has made a demand for payment, it is not for the board of liquidation to refuse because some other creditor may present himself at some future day, and make a like demand. The maxim is, "Qui prior est tempore potior est jure."

B. K. Miller, for plaintiff in error.

John D. Rouse, Wm. Grant, and Richard De Gray, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PER CURIAM. All the reasons urged for reversing the judgment below in this case are fully met and answered in the opinion filed by the acting circuit judge, and found in the record. The judgment of the circuit court is therefore affirmed.