[No. 6489. Decided November 19, 1906.]

THE STATE OF WASHINGTON, *on the Relation of H. P. Gillette, Petitioner,* v. C. W. CLAUSEN, STATE AUDITOR, *Defendant.*[1]

STATES—CONTRACT OF EMPLOYMENT—AUTHORITY OF RAILWAY COMMISSION—COMPENSATION OF EXPERT. Under Laws 1905, p. 145, §§ 2 and 12, authorizing the railway commission "to employ" experts, the commission has power to fix their salary and the same cannot be questioned by the state auditor as excessive, in the absence of fraud (FULLERTON, J., dissenting).

STATE AUDITOR—CLAIMS AGAINST STATE—AUDITING OF. Under Bal. Code, §§ 134 and 147, which provide for the auditing of all claims against the state by the state auditor, except such as are expressly authorized by law to be audited and settled by other officers, the auditor exercises no judgment and discretion but only acts in a ministerial capacity in auditing the claim of an expert authorized by law to be employed by the state railway commission, although the commission is not authorized to "audit" the claim (FULLERTON, J., dissenting).

MANDAMUS—TO STATE OFFICER—JUDICIAL OR MINISTERIAL CAPACITY —PRACTICE UNDER CODE. Under the code, it is immaterial whether mandamus to a state officer is sought to review the exercise of judgment and discretion or acts done in a purely ministerial capacity, as the proceeding is a form of civil action in which any appropriate relief may be awarded.

Application filed in the supreme court October 8, 1906, for a writ of mandate to compel the state auditor to audit a claim for the salary of an expert employed by the railway commission.   Granted.

*H. A. Fairchild,* for relator.

*The Attorney General,* for respondent, contended, among other things, that the duties of the state auditor in allowing claims is quasi judicial and his discretion cannot be controlled.   Pierce's Code, § 8391; *Boner v. Adams,* 65 N. C.

[1]Reported in 87 Pac. 498.

639; *State v. Hinkson,* 7 Mo. 353; *State ex rel. Lindley v. Clark,* 61 Mo. 263; Bal. Code, § 147; *Angle v. Runyon,* 38 N. J. L. 403. Mandamus does not lie because there is a remedy by action against the state. Bal. Code, §§ 5608, 5756; 19 Am. & Eng. Ency. Law (2d ed.), pp. 720, 745. Mandamus will not lie to control the judicial action of public officers. Throop, Public Officers, p. 785, §820; *People ex rel. Myers v. Barnes,* 114 N. Y. 317, 20 N. E. 609, 21 N. E. 739; *Kroutinger v. Board of Examiners,* 8 Idaho 463, 69 Pac. 279. The railway commission has no implied power to employ the experts, except ·at a reasonable salary. *Polk v. State,* 138 Cal. 384, 71 Pac. 435, 648; *United States v. Maurice,* 2 Brock. 96; *Bowe v. United States,* 42 Fed. 761.

RUDKIN, J.—Original application for writ of mandamus. The petition for the writ avers in substance, that the petitioner is, and for many years last past has been, engaged as an expert in ascertaining the cost of construction and cost of duplication of railroads and public works, and is, and for many years last past has been, a qualified expert in ascertaining the cost of construction of railroads and other public work; that the railroad commission of this state, at a regular meeting, duly hired and employed the petitioner to inspect the railroads constructed within the state, and to assist the commission in ascertaining the amount of money expended in the construction and equipment per mile of each and all of said railroads, and then and there agreed to pay the petitioner, from the appropriation provided in the act creating the railroad commission, a salary of $1,000 per month, and necessary traveling expenses while engaged upon the discharge of his duties, the petitioner to have full charge and direction of the entire work connected therewith, subject to the approval of the commission; that there are approximately·3,-700 miles of railroad and side-tracks within the state, and the work connected therewith will necessitate the employment of many engineers and accountants, and the examining and ex-

perting of maps, profiles, books and records of all of said rail-
roads, together with an examination and survey of the tracks
and lines, and requires knowledge and skill of a high degree in
order to comply with the provisions of said act; that, in pur-
suance of said contract of employment, the petitioner duly
qualified and entered upon the discharge of his duties on the
21st day of July, 1906, and remained continuously therein
until the 1st day of September, 1906, and is still so em-
ployed; that at a regular meeting of the railroad commis-
sion, held on the 1st day of September, 1906, said commis-
sion duly examined, audited and allowed the petitioner's claim
for salary up to said date, under said contract of employ-
ment, amounting in all to the sum of $1,364, and the chair-
man of said commission certified the same to be correct;
that said claim was thereupon presented to the respondent
as state auditor, but the respondent rejected the same, and
refused to draw his warrant on the treasurer for the amount
thereof; that the petitioner is the owner and holder of said
claim, is the party beneficially interested therein, and has no
plain, speedy or adequate remedy at law.

The answer or return of the state auditor admits the con-
tract of employment as set forth in the petition, but avers
that the terms of the contract are unreasonable and excessive;
denies that the railroad commission had any power or au-
thority in law to audit or allow the claim; admits that the
claim was presented as alleged and by him rejected, and
avers, by way of an affirmative defense, that the respondent
deemed the claim unreasonable and excessive and not a valid
claim against the state, wherefore, he rejected and disallowed
the same. The issues thus presented involve in a measure the
powers of the railroad commission and the functions of the
state auditor.

Section 2 of the Railroad Commission Act, Laws of 1905,
page 145, provides that

"Said commission may appoint a secretary at a salary of
not more than two thousand dollars per annum, and may

appoint such clerks as may be necessary, not to exceed three in number, at a salary of not to exceed twelve hundred dollars per annum each, and such other persons as experts as may be necessary to perform the duties that may be required of them by said act."

Section 12 provides that,

"The commission shall ascertain as early as practicable the amount of money expended in the construction and equipment per mile of every railway in Washington. The commission may also ascertain the amounts paid for salaries to the officers of the railroad or express companies and the wages paid to employees. For the purpose in this section named, the commission may employ sworn experts to inspect and assist them when needed, and from time to time, as the information required by this section is obtained, it shall communicate the same to the attorney general by report, and file a duplicate thereof with the secretary of state for public use, and said information shall be printed from time to time in the annual report of the commission."

The foregoing statutory provisions authorize the contract of employment set forth in the petition. As said by the court in *McCluskey v. Cromwell*, 11 N. Y. 593,

"To employ, is 'to engage in one's service; to use as an agent or substitute in transacting business; to commission and entrust with the management of one's affairs;' and when used in respect to a servant or hired laborer, is equivalent to hiring, which implies a request and a contract for a compensation, and has but this one meaning when used in the ordinary affairs and business of life."

Under § 2, *supra*, the commission clearly has authority to fix the compensation of its secretary and clerks, within the limits imposed by the statute, and we think the same power exists as to the experts provided for in §§ 2 and 12 of the act. It is scarcely to be supposed that one whose compensation is measured by no fixed rules would voluntarily enter the employ of the state, and leave the question of his compensation to the discretion of the state auditor, or to the un-

certainty of litigation after his contract of service was completed, and we do not think that the legislature so intended. On the other hand, it would seem to be in the interest of the state, and in consonance with sound business principles, to know the extent of the state's liability before the indebtedness against it becomes an established fact.  For these reasons we are of the opinion that the contract out of which this controversy arose is a binding obligation of the state, and as such is governed by the same rules as any other contract.

"There is not one law for the sovereign and another for the subject; but, when the sovereign engages in business and the conduct of business enterprises, and contracts with individuals, although an action may not lie against the sovereign for a breach of the contract, whenever the contract, in any form, comes before the courts, the rights and obligations of the contracting parties must be adjusted upon the same principles as if both contracting parties were private persons. Both stand upon equality before the law, and the sovereign is merged in the dealer, contractor and suitor." *People v. Stephens*, 71 N. Y. 527, 549.

Of course, like any other contract, the contract of the state may be impeached for fraud, but no such question is presented by the answer before us.  True, the answer avers that the compensation agreed upon was unreasonable and excessive, but, in the absence of fraud, the railroad commission is the sole judge of that question.  So long as the legislature keeps within the constitution, and the officers charged with the administration of the law keep within the statute, the state auditor and the courts have no concern with the policy of the law or the methods employed in its administration.

The petitioner contends that the state auditor acted in a purely ministerial capacity in drawing his warrant on the state treasurer upon the presentation of his claim, whereas the respondent contends that he exercised judgment and discretion in its adjustment and settlement.  Subd. 1 of § 134,

Bal. Code (P. C. § 8391), provides that it shall be the duty of the state auditor:

". . . to audit, adjust, and settle all claims against the state, payable out of the treasury, except only such claims as may be expressly required by law to be audited and settled by other officers or persons."

Section 147 (P. C. § 8404), provides that:

"The auditor, whenever he may think it necessary in the settlement of any account or the drawing of any warrant, may examine the party, witnesses, and others on oath or affirmation touching any matter material to be known in the settlement of the account or the drawing of the warrant, and for that purpose he may issue summons and compel witnesses to attend before him and give testimony in the same manner and by the same means allowed in courts of record, and he shall reduce such evidence to writing, and file the same in his office."

Under these provisions, where the amount of a claim is fixed by law, or where the claim is audited and settled by some other officer or person by express authority of law, the auditor acts in a purely ministerial capacity in drawing his warrant on the treasurer; but in all other cases he exercises judgment and discretion in the adjustment and settlement of the claims presented to him. In this connection the respondent contends that the railroad commission had no authority to audit or adjust the claim in suit, and this is perhaps true. The commission seems to have no express authority to audit and adjust claims, except the traveling expenses of the commissioners, their secretary and clerks, under § 2, and the fees of witnesses under § 14. It is proper that all vouchers for debts incurred by the commission should be approved by the commission for the guidance of the state auditor, but whether such approval is anything more than advisory to that officer we need not now determine. Under the old practice in mandamus the question whether an auditing officer, against whom a writ of mandamus was sought,

acted in a purely ministerial capacity, or whether he exercised judgment and discretion in the settlement and adjustment of claims presented to him, was one of controlling importance, as the writ would lie in the former case but not in the latter. Under the practice in this state, however, the question whether the officer acts in a purely ministerial capacity or whether he exercises judgment and discretion, seems to be one of little moment, except in so far as it may serve as a guide for the officer himself in the discharge of his official duties.

This court has repeatedly held that a mandamus proceeding under our statute possesses all of the elements of a civil action, and that it is no defense to the writ to show that the officer to whom the writ is directed exercised judgment and discretion and acted in good faith in the disallowance of the claim upon which the application for the writ is based. If any part of the relief to which the petitioner is entitled is by writ of mandamus the court will try out all incidental questions in the mandamus proceeding. Thus, in *State ex rel. Brown v. McQuade*, 36 Wash. 579, 79 Pac. 207, after reviewing our previous decisions, the court said:

"In our practice, mandamus is nothing more than one of the forms of procedure provided for the enforcement of rights and the redress of wrongs. The procedure has in it all the elements of a civil action. The facts stated in the affidavit for the writ may be controverted by a return, raising both questions of law and fact. The return likewise may be controverted, and a trial had on the issues of fact thus raised, either before the court, a jury, or a referee, as the court may order. Judgment can be entered on the verdict or findings not only directing the issuance of a peremptory mandate, but for damages and costs on which execution may issue. The statute has been so framed as to afford complete relief in all cases falling within its scope and purport, whether these be cases of wilful violation of recognized rights or denials, made in good faith, that the rights contended for exist. In other words, the right to sue out the writ is not made to depend on the character of the dispute, but on what

answer is given to the question, can the ordinary course of law afford a plain, speedy, and adequate remedy? If the ordinary course of law will furnish such a remedy, the writ will not issue; otherwise, it will. It was to avoid circuity of action, thus doing away with the necessity of resorting to more than one proceeding for the enforcement of a right, that the law was framed."

See, also, *Bacon v. Tacoma*, 19 Wash. 674, 54 Pac. 609; *State ex rel. Dudley v. Daggett*, 28 Wash. 1, 68 Pac. 340, and the numerous cases cited in *State ex rel. Brown v. McQuade, supra*. Perhaps the same liberal practice would permit the state auditor to interpose any defense that would be available to the state if sued directly; at least, we concede that much in favor of the respondent for the purposes of this case.

For the foregoing reasons, we are of opinion that the claim in suit is a valid charge against the state, and the writ will issue as prayed.

MOUNT, C. J., CROW, ROOT, DUNBAR, and HADLEY, JJ., concur.

FULLERTON, J. (dissenting) — The majority hold, as I understand the foregoing opinion, that the railroad commission, since they are empowered to employ an expert and fix his compensation, may lawfully contract to pay him any sum they please as long as they are not guilty of fraud in making the contract. I am unable to concur in this holding. It seems to me that it not only puts a too narrow construction upon the statute, but one harmful to the interests of the state as well.

The statute defining the powers and duties of the auditor is cited in the majority opinion. Briefly, it grants to the state auditor power, and makes it his duty,

" . . . to audit, adjust and settle all claims against the state, payable out of the treasury, except only such claims as may be expressly required by law to be audited and settled by other officers or persons."

There is in this, it will be observed, no limitation to the effect that the duty and power to audit, adjust and settle, can only be exercised by the auditor where the contract giving rise to the claim has been fraudulently entered into. On the contrary, the only limitation is in the case where the duty has been delegated to some other person; all claims are to be audited, but certain claims may be audited by persons or officers other than the state auditor. As no exception is made in favor of claims incurred by the railroad commission, it must follow that claims against the state created by that body are subject to audit by the state auditor, unless some other person or officer is empowered to audit them. The only other person or body in whom this power could possibly rest, under the existing statutes, is the railroad commission itself, but it is expressly conceded by the majority that they have no such power. I can see no escape, therefore, from the conclusion that the statute vests this power in the state auditor. As power to "audit, adjust and settle a claim," is power to hear and examine it, and after such hearing and examination to allow it or reject it as a whole, or to allow it in part and reject it in part, I think that when the auditor rejected this claim he acted within the powers conferred upon him by the statute, and if the claim is to be paid out of the treasury at all it must be established as a lawful claim by an action against the state, or by some form of legislative relief.

But the majority say that:

"It is scarcely to be supposed that one whose compensation is measured by no fixed rules would voluntarily enter the employ of the state, and leave the question of his compensation to the discretion of the state auditor or to the uncertainty of litigation after his contract of service was completed, and we do not think the legislature so intended. On the other hand, it would seem to be in the interest of the state, and in consonance with sound business principles, to know the extent of the state's liability before the indebtedness against it becomes an established fact."

It seems to me that this reasoning is inconclusive. If the statute is free from ambiguity, a proposition the majority seem to concede, then effect should be given it according to its terms, regardless of any question of inconvenience or difficulty that may arise in procuring some one to perform services for the state on the terms it imposes. Defects in the law, under such circumstances, must be laid to the fault of the law—a fault in the province of the legislature, not of the court, to correct. The claim that it is to the interest of the state that the commission should have the right to fix the amount of the compensation in advance of incurring the liability, is refuted by the facts of the very case at bar. Here, according to the state auditor, the railroad commission have agreed to pay an expert out of the state treasury unreasonable and excessive fees, yet the state, under the rule laid down by the majority, cannot protect itself against the unlawful payment without alleging and proving that the commission have been guilty of fraud in contracting to pay the fees. Surely, if the auditor be correct in his contention, it would be to the best interest of the state to allow it to test the reasonableness of that contract.

But admitting that the statute is ambiguous and in need of construction, I think the majority wrong in holding that the auditing power of the state cannot be permitted to inquire into the reasonableness of a contract made by the railroad commission without first alleging and proving that the commission was guilty of fraud in making the contract. It must be remembered that it is the money of the state that is being expended, and that the financial result to the state arising from the payment of unreasonable and excessive compensation is the same, regardless of the intent with which the contract to pay is entered into. Where, therefore, there is room for two constructions, one of which will protect the state against extravagant claims, while the other will not, I cannot think there ought to be any hesitancy in deciding which one to adopt.

In my opinion the relator should be compelled to take issue upon the allegations made by the state auditor, and submit the issue to some tribunal competent to determine ,questions of fact.