**UNITED STATES ex rel. MILLER, Alien Property Custodian, v. CLAUSEN, State Auditor of Washington.**

**SAME v. BABCOCK, State Treasurer of Washington.**

(District Court, W. D. Washington, S. D. July 13, 1923.)

Nos. 4115, 4116.

1. Mandamus ⬤102(1)—State auditor held to have discretion in issuance of warrants on compensation fund.

Under Rem. Comp. St. Wash. 1922, § 7705, providing that disbursements from the compensation fund shall be made only on warrants drawn by the state auditor, when construed with Rem. & Bal. Code Wash. §§ 9007, 9013, 9019, the auditor has discretion with reference to issuing a warrant notwithstanding the provisions of section 7703, governing the control by the Director of Labor and Industry over that fund.

2. States ⬤191(2)—Mandamus proceedings to compel executive officers to perform official acts are suits against the state.

Mandamus proceedings against the state auditor and state treasurer, who are made executive officers of the state by Const. Wash. art. 3, § 1, to compel them to perform acts which are not in their own individual interest, but solely for the state, are to be considered as suits against the state.

3. Courts ⬤334—Conformity statute does not apply as to scope of mandamus.

In mandamus proceedings, the conformity statute does not apply, at least as to the scope of the remedy, so that it is immaterial that the

state practice permits the issuance of mandamus to direct the performance of a discretionary act.

**4. Courts ⊕⊐265—District Court has no general jurisdiction to control acts of state officials by mandamus.**

Under its general jurisdiction the United States District Court may not by mandamus proceedings control a state auditor or treasurer in the exercise of his discretion nor take money from the state treasury.

**5. Courts ⊕⊐303(1)—Trading with the Enemy Act did not give jurisdiction to District Court over proceedings against state; "body politic."**

Trading with the Enemy Act, § 17 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½i), giving District Courts jurisdiction over proceedings under that act and section 2 (section 3115½aa), defining "person," as used in the act, as including a body politic, is not, even if the words "body politic" in certain statutes are broad enough to include the state, to be construed to give the District Court jurisdiction over suits against the state to compel delivery of money to the Alien Property Custodian under sections 6, 7 (sections 3115½cc, 3115½d), even though Congress in exercise of its war powers could confer such jurisdiction, in view of the policy manifested by Judicial Code § 233 (section 1210), to give the Supreme Court jurisdiction over suits against a state with certain specified exceptions.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Body Politic or Corporate.]

Mandamus. Proceeding by the United States, on the relation of Thomas W. Miller, as Alien Property Custodian, against C. W. Clausen, State Auditor of the State of Washington, and by the United States on the relation of Thomas W. Miller, Alien Property Custodian, against C. L. Babcock, State Treasurer of the State of Washington. Demurrer by the respondents in each case. Demurrer sustained for want of jurisdiction.

H. G. & Dix H. Rowland, of Tacoma, Wash., for relator.

Relator cites and relies upon the following cases: Commercial Trust Co., of New Jersey, v. Thomas W. Miller, Alien Property Custodian, 43 Sup. Ct. 486, 67 L. Ed. ——; Charles Ahrenfeldt v. Thomas W. Miller, Alien Property Custodian, 43 Sup. Ct. 490, 67 L. Ed. ——; Kahn v. Anderson, 255 U. S. 1, 41 Sup. Ct. 224, 65 L. Ed. 469; Vincenti v. U. S., 272 Fed. 114; Id., 256 U. S. 700, 41 Sup. Ct. 538, 65 L. Ed. 1178; Kohn v. Kohn (D. C.) 264 Fed. 253; Miller v. U. S., 78 U. S. (11 Wall.) 268, 20 L. Ed. 135; Miller v. Camp (D. C.) 280 Fed. 520; In re Miller (C. C. A.) 281 Fed. 773; Garvan v. Marconi Wireless Tel. Co. (D. C.) 275 Fed. 486; Garvan v. $20,000 Bonds (C. C. A.) 265 Fed. 477; Wenatchee Produce Co. v. Great Northern Railway (D. C.) 271 Fed. 784; Central Union Trust Co. v. Garvan, 254 U. S. 554, 41 Sup. Ct. 214, 65 L. Ed. 403; Stoehr v. Wallace, 255 U. S. 239, 41 Sup. Ct. 293, 65 L. Ed. 604; Simon v. Am. Exchange Bank, 43 Sup. Ct. 165, 67 L. Ed. ——; Poindexter v. Greenhow, 114 U. S. 270, 5 Sup. Ct. 903, 29 L. Ed. 191; Board of Liquidation et al. v. McComb, 92 U. S. 531, 35 L. Ed. 623; State v. Toole, 26 Mont. 22, 66 Pac. 496, 55 L. R. A. 644, 91 Am. St. Rep. 386; Chaffin v. Taylor, 116 U. S. 571, 6 Sup. Ct. 518, 29 L. Ed. 728; State ex rel. Gillette v. Clausen, 44 Wash. 437, 87 Pac. 498; Aber-

nathy v. Medical Lake, 9 Wash. 112, 37 Pac. 306; Union Sav. B. & T. Co. v. Gelbach, 8 Wash. 497, 36 Pac. 467, 24 L. R. A. 359; Cloud v. Sumas, 9 Wash. 399, 37 Pac. 305; LaFrance Fire Engine Co. v. Davis, 9 Wash. 600, 38 Pac. 154; Mason v. Purdy, 11 Wash. 591, 40 Pac. 130; Smith v. Ormsby, 20 Wash. 396, 55 Pac. 570, 72 Am. St. Rep. 110; State ex rel. Porter v. Headlee, 18 Wash. 220, 51 Pac. 369; State ex rel. Dahlquist v. Van Wyck, 20 Wash. 391, 54 Pac. 768; American Bridge Co. v. Wheeler, 35 Wash. 40, 76 Pac. 534; State ex rel. Maddaugh v. Ritter, 74 Wash. 649, 134 Pac. 492; Beach v. Olson et al., 91 Wash. 56, 157 Pac. 34; Savage v. Sternberg, 19 Wash. 679, 54 Pac. 611, 67 Am. St. Rep. 751; Brownell v. Town of Greenwich, 114 N. Y. 518, 22 N. E. 24–27, 4 L. R. A. 685; State v. Pierce, 52 Kan. 521, 35 Pac. 19–22; Corning v. Meade County Commissioners, 102 Fed. 57, 42 C. C. A. 154; State v. Akers, 92 Kan. 169, 140 Pac. 637, Ann. Cas. 1916B, 543; Jerome v. Rio Grande County Commissioners (C. C.) 18 Fed. 873; Bank of Calif. v. Shaber, 55 Cal. 322; State v. Gandy, 12 Neb. 232, 11 N. W. 296; Bush v. Geisy, 16 Or. 355, 19 Pac. 123; Day v. Callow, 39 Cal. 593; Lankford v. Platte Iron Works, 235 U. S. 461, 35 Sup. Ct. 173, 59 L. Ed. 316; Rolston v. Missouri Fund Commissioners, 120 U. S. 390, 7 Sup. Ct. 599, 30 L. Ed. 721; 18 Ruling Case Law, § 148; Ray v. Wilson, 29 Fla. 342, 10 South. 613, 14 L. R. A. 775; Masses Publishing Co. v. Patten, 246 Fed. 24, 158 C. C. A. 250, L. R. A. 1918C, 79, Ann. Cas. 1918B, 999; U. S. v. Casey (D. C.) 247 Fed. 362; Story v. Perkins (D. C.) 243 Fed. 997; McCormick v. Humphrey, 27 Ind. 144; Merchants', etc., Bank v. Union Bank, 25 La. Ann. 387; U. S. v. Casey (D. C.) 247 Fed. 362; Tarble's Case, 13 Wall. (80 U. S.) 397, 20 L. Ed. 597; Miller, Executor, v. U. S., 78 U. S. (11 Wall.) 268–331, 20 L. Ed. 135; Jeffersonian Publishing Co. v. West (D. C.) 245 Fed. 585; U. S. v. Pierce (D. C.) 245 Fed. 878; U. S. v. Sugar (D. C.) 243 Fed. 423; Story v. Perkins (D. C.) 243 Fed. 997; U. S. v. Sugarman (D. C.) 245 Fed. 604; U. S. v. Stephens (D. C.) 245 Fed. 956; Angelus v. Sullivan, 246 Fed. 54, 158 C. C. A. 280; State v. Hohm, 139 Minn. 267, 166 N. W. 181, L. R. A. 1918C, 304; Cohens v. Virginia, 6 Wheat. 264, 5 L. Ed. 257; Railroad Co. v. Miss., 102 U. S. 135, 26 L. Ed. 96; Ames v. Kansas, 111 U. S. 449, 4 Sup. Ct. 437, 28 L. Ed. 482; Virginia Coupon Cases, 114 U. S. 270, 5 Sup. Ct. 903, 962, 29 L. Ed. 185; Smith v. Kansas City Title & Trust Co., 255 U. S. 199, 41 Sup. Ct. 243, 65 L. Ed. 585; Texas v. Lewis (C. C.) 14 Fed. 65; U. S. v. Louisiana, 123 U. S. 33, 8 Sup. Ct. 17, 31 L. Ed. 69; Id., 127 U. S. 182, 8 Sup. Ct. 1047, 32 L. Ed. 66; Jones v. Reed, 3 Wash. 60, 27 Pac. 1067; Johnson v. Lankford, 245 U. S. 544, 38 Sup. Ct. 203, 62 L. Ed. 460; Hopkins v. Clemson Agricultural College, 221 U. S. 635, 31 Sup. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243; Davenport v. U. S., 9 Wall. 409, 19 L. Ed. 704; Holt County v. National Life Ins. Co., 80 Fed. 686, 25 C. C. A. 475; Graham v. Folsom, 200 U. S. 248, 26 Sup. Ct. 245, 50 L. Ed. 464; Gunter v. Atl. Coast Line R. Co., 200 U. S. 273, 274, 26 Sup. Ct. 252, 50 L. Ed. 478; Morrill v. Am. Reserve Bond Co. (C. C.) 151 Fed. 305; Nashville v. Cooper, 6 Wall. (73 U. S.) 247, 18 L. Ed. 851.

John H. Dunbar, Atty. Gen., M. H. Wight, Asst. Atty. Gen., and Guio & Halverstadt, of Seattle, Wash., for respondents.

Respondents cite and rely upon Board of Liquidation v. McComb, 92 U. S. 531 at 541, 23 L. Ed. 623; Antoni v. Greenhow, 107 U. S. 769 at 783, 2 Sup. Ct. 91, 27 L. Ed. 468; In re Ayers, 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 216; Pennoyer v. McConnaughy, 140 U. S. 1, at 9, 10, 11 & 12, 11 Sup. Ct. 699, 35 L. Ed. 363; Fitts v. Mc-Ghee, 172 U. S. 516 at 524, 525, 528 & 529, 19 Sup. Ct. 269, 43 L. Ed. 535; Lankford v. Platte Iron Works, 235 U. S. 461, 35 Sup. Ct. 173, 59 L. Ed. 316; Louisiana v. Jumel, 107 U. S. 711 at 718, 720, 721 & 722, 2 Sup. Ct. 128, 27 L. Ed. 448; Smith v. Reeves, 178 U. S. 436 at 438, 20 Sup. Ct. 919, 44 L. Ed. 1140; Johnson v. Lankford, 245 U. S. 541 at 545, 38 Sup. Ct. 203, 62 L. Ed. 460; Clifford, Superintendent, etc., v. Miller (C. C. A.) 288 Fed. 537; Miller, Alien Property Custodian, v. Rouse (D. C.) 276 Fed. 715 at 716.

CUSHMAN, District Judge. In these two cases, the Alien Property Custodian sues. In the one case, the court is asked to direct the treasurer of the state of Washington to pay the relator the amount due on certain warrants in his possession, drawn upon the accident fund, which fund is held by the state treasurer under the Workmen's Compensation Act of the state. The warrants and claims represented are alleged to be due former alien enemies or the allies of alien enemies of the United States. In the other case, the court is asked to direct the state auditor to audit a certain voucher upon such fund covering like claims, issued relator by the Department of Labor and Industries of the state of Washington and to issue relator a warrant upon the state treasurer for payment thereof. Respondents demur generally and upon the ground that the court has no jurisdiction.

While these cases grow out of matters involved in Clifford, Superintendent, etc., v. Miller, Custodian (C. C. A.) 288 Fed. 537, they are not ancillary to that cause. Section 24 of the Workmen's Compensation Act (section 7703 Remington's Comp. Stats. 1922) in part provides:

"The director of labor and industries shall, in accordance with the provisions of this act: * * *

"(2) Ascertain and establish the amounts to be paid into and out of the accident fund.

"(3) Regulate the proof of accident and extent thereof, the proof of death and the proof of relationship and the extent of dependency. * * *

"(5) Issue proper receipts for moneys received, and certificates for benefits accrued and accruing."

Section 26 of the act (section 7705, Rem. Comp. Stats.) provides:

"Disbursement out of the funds shall be made only upon warrants drawn by the state auditor upon vouchers therefor transmitted to him by the department and audited by him. The state treasurer shall pay every warrant out of the fund upon which it is drawn. * * *"

The statute defining generally the duties of the state auditor provides, among others:

"It shall be the duty of the auditor,

"1. To audit, adjust, and settle all claims against the state, payable out of the treasury, except only such claims as may be expressly required by law to be audited and settled by other officers or persons. * * *

"16. In his discretion to require any person presenting an account for settlement to be sworn before him, and to answer, orally or in writing, as to any facts relating to it. * * *"

Section 9007, Rem. & Bal. Code.

By section 9013, Rem. & Bal. Code, it is provided:

"All persons having claims against the state shall exhibit the same, with the evidence in support thereof, to the auditor, to be audited, settled and allowed, within two years after such claim shall have accrued and not afterwards."

While section 9019, Rem. & Bal. Code, provides:

"The auditor whenever he may think it necessary in the settlement of any account or the drawing of any warrant, may examine the party, witnesses, and others on oath or affirmation touching any matter material to be known in the settlement of the account or the drawing of the warrant, and for that purpose he may issue summons and compel witnesses to attend before him and give testimony in the same manner and by the same means allowed in courts of record, and he shall reduce such evidence to writing, and file the same in his office."

[1] On the part of the relator it is contended that under section 7705, Remington's Compiled Stats., supra, the duties of the auditor concerning the issuing of a warrant are purely ministerial; that all discretion in the matter is exhausted when the director has, under section 7703, Remington's Comp. Stats., ascertained and established the amounts to be paid and issued a certificate for benefits accrued. The court is constrained to give effect to each word of the statute, unless to do so would clearly tend to defeat or impair the legislative intent. The court cannot say, in view of the language of section 7705, but that it was intended the auditor should exercise a supervisory power and discretion concerning the acts of the director, or it may have been intended that he in his discretion should consider matters supplemental to the auditor's determination, as in case of death of a beneficiary after certificate or voucher issued. In either event he is vested with a discretion in the matter.

It has been contended that, these cases arising under the Constitution and laws of the United States, the jurisdiction of this court is original, and that of the Supreme Court appellate. If that were all that was to be taken into account, the position would be unassailable, but the controlling questions are whether, the court being asked to control the discretion of these state officers, the suits are not, in effect, suits against the state, and whether the provisions of the Trading with the Enemy Act show an intention to confer on this court power so to do.

[2] The state auditor and state treasurer are, by the state Constitution, made executive officers of the state of Washington. Article 3, § 1. The acts, the performance of which the court is asked to compel them to do, are not at all in their own individual interest, but solely for the state. The suits are therefore to be considered as against the state. Lankford v. Platte Iron Works, 235 U. S. 461, 35 Sup. Ct. 173, 59 L. Ed. 316; Louisiana v. Jumel, 107 U. S. 711, 2 Sup. Ct. 128, 27 L. Ed. 448; Smith v. Reeves, 178 U. S. 436, 20 Sup. Ct. 919,

44 L. Ed. 1140. While the question is one of jurisdiction of the court, the following considerations are not deemed out of place:

[3] Under the state Constitution and law, it may be that the proper state court, by mandamus, could decree payment of the warrants by the auditor. State ex rel. Gillette v. Clausen, 44 Wash. 437, 87 Pac. 498. But the question before this court is not solved by that concession. Relator in the suit against the auditor relies upon the case of State ex rel. Gillette v. Clausen, supra; but in that case it was said:

"Under the old practice in mandamus, the question whether an auditing officer, against whom a writ of mandamus was sought, acted in a purely ministerial capacity, or whether he exercised judgment and discretion in the settlement and adjustment of claims presented to him, was one of controlling importance, as the writ would lie in the former case, but not in the latter. Under the practice in this state, however, the question whether the officer acts in a purely ministerial capacity, or whether he exercises judgment and discretion, seems to be one of little moment, except in so far as it may serve as a guide for the officer himself in the discharge of his official duties. This court has repeatedly held that a mandamus proceeding under our statute possesses all of the elements of a civil action, and that it is no defense to the writ to show that the officer to whom the writ is directed exercised judgment and discretion and acted in good faith in the disallowance of the claim upon which the application for the writ is based. If any part of the relief to which the petitioner is entitled is by writ of mandamus the court will try out all incidental questions in the mandamus proceeding." 44 Wash. at pages 442, 443, 87 Pac. 500.

The authority of the District Court of the United States, at least where the jurisdiction rests, not upon diversity of citizenship, but, in a case such as the present one, upon the fact that the controversy arises under the Constitution and laws of the United States, does not extend as far as that of the state court under its law as construed in the foregoing opinion. By section 262 of the Judicial Code (section 1239, U. S. Comp. St.) the court is authorized to—

"issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law."

[4] In mandamus proceedings the conformity statute does not apply, at least as to the scope of the remedy. Rosenbaum v. Bauer, 120 U. S. 450, 7 Sup. Ct. 633, 30 L. Ed. 743; Board of Liquidation v. U. S., 108 Fed. 689, 47 C. C. A. 587; Gares v. N. W. Nat. Bldg. L. & I. Ass'n (C. C.) 55 Fed. 209. Under its general jurisdiction, this court may not, by mandamus, control such state officer in the exercise of his discretion, nor take money from the treasury of the state. Clifford v. Miller (C. C. A.) 288 Fed. 537.

[5] The remaining question is not whether the Custodian has the right to the possession of the money seized, but withheld by the treasurer in the one case, or whether he has the right to the warrants which the auditor refuses to issue in the other. The question now for determination is whether, by the Trading with the Enemy Act, this court has been given special jurisdiction and authority to determine that right and decree delivery to the Custodian of the money and the issuance and delivery to him of the warrants. By section 6 of the Trad-

ing with the Enemy Act (section 3115½cc, U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919) it is provided:

"The President is authorized to appoint, prescribe the duties of, and fix the salary (not to exceed $5,000 per annum,) of an official to be known as the Alien Property Custodian, who shall be empowered to receive all money and property in the United States due or belonging to an enemy, or ally of enemy, which may be paid, conveyed, transferred, assigned, or delivered to said custodian under the provisions of this act and to hold, administer, and account for the same under the general direction of the President and as provided in this act."

### Section 7 (section 3115½d), in part, provides:

"(c) If the President shall so require any money or other property including (but not thereby limiting the generality of the above) patents, copyrights, applications therefor, and rights to apply for the same, trade marks, choses in action, and rights and claims of every character and description owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy or ally of enemy not holding a license granted by the President hereunder, which the President after investigation shall determine is so owing or so belongs or is so held, shall be conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian or the same may be seized by the Alien Property Custodian; and all property thus acquired shall be held, administered and disposed of as elsewhere provided in this act. * * *

"The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or required so to be, or seized by him shall be that provided by the terms of this act, and in the event of sale or other disposition of such property by the Alien Property Custodian, shall be limited to and enforced against the net proceeds received therefrom and held by the Alien Property Custodian or by the Treasurer of the United States. * * *

"(e) No *person* shall be held liable in any court for or in respect to anything done or omitted in pursuance of any order, rule, or regulation made by the President under the authority of this act."

### Section 3115½i provides:

"The District Courts of the United States are hereby given jurisdiction to make and enter all such rules as to notice and otherwise, and all such orders and decrees, and to issue such process as may be necessary and proper in the premises to enforce the provisions of this act, with a right of appeal from the final order or decree of such court as provided in sections one hundred and twenty-eight and two hundred and thirty-eight of the act of March third, nineteen hundred and eleven, entitled 'An act to codify, revise, and amend the laws relating to the judiciary.'"

### Section 3115½aa provides:

"The word '*person*,' as used herein, shall be deemed to mean an individual, partnership, association, company, or other unincorporated body of individuals, or corporation or *body politic*." (Italics those of the court.)

Unless the words "body politic," occurring in the last-quoted section, were meant to include a state of the Union, as well as a municipality, there would, without question, be no authority for these proceedings. It has been held that the words "body politic," used in certain statutes, include a state. Ervin v. State, 150 Ind. 332, 48 N. E. 249, at 251. In holding that the United States could make a contract not previously directed by statute, Marshall, as Circuit Justice, held (U. S. v. Maurice, Fed. Cas. No. 15,747):

"The United States is a government and consequently, a body politic and corporate, capable of obtaining the objects for which it was created, by the means which are necessary for the attainment."

It is well understood that this is a possessory suit, a seizure or capture on land, and that, as provided in the act, the rights of all interested are to be determined after the surrender of possession. Under its war powers, Congress doubtless could confer upon a District Court authority to coerce a sovereign state and its officers, but that it so intended is not lightly to be concluded in the absence of positive and express congressional enactment, particularly so in view of the provisions of section 233 of the Judicial Code (section 1210, Comp. Stats.), which provides:

"The Supreme Court shall have exclusive jurisdiction of all controversies of a civil nature where a state is a party, except between a state and its citizens, or between a state and citizens of other states, or aliens, in which latter cases it shall have original, but not exclusive, jurisdiction."

This statute is controlling of this question, despite the fact that the present suit may not be purely a controversy of a civil nature. The dignified treatment and consideration due a sovereign state form no small part of the reason that has actuated the law-making powers in making a state subject alone to the jurisdiction of the Supreme Court. An implied repeal of the law conferring, so far as the courts of the United States are concerned, exclusive jurisdiction on the Supreme Court of suits against a state, is not to be sanctioned, in view of the long-established recognition of this principle in the history of the doctrine of state's rights.

The demurrers are sustained for want of jurisdiction.