RAFAEL TIRADO VERRIER, demandante y apelante, *v.* LA JUNTA DE RETIRO DE FUNCIONARIOS Y EMPLEADOS PERMANENTES DEL GOBIERNO INSULAR DE PUERTO RICO, demandada y apelada.

No. 4109.—*Visto:* Mayo 20, 1927 y Febrero 7, 1928.
*Resuelto:* Diciembre 24, 1928.

1003

*Luis Tirado Géigel*, abogado del apelante; *Hon. Attorney General James R. Beverly, J. A. López Acosta, R. A. Gómez y F. Janer*, abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

El apelante Rafael Tirado Verrier, presentó a la Corte de Distrito de San Juan, P. R., una petición de *mandamus* contra la junta de retiro de funcionarios y empleados permanentes del Gobierno Insular de Puerto Rico, y alegó esencialmente que en 1 de febrero de 1926, era el mismo demandante Registrador de la Propiedad de San Juan, Sección Primera, y como tal pertenecía al Servicio Civil no clasificado del Gobierno Insular y se hallaba comprendido en la Ley No. 104 de 1925, habiendo prestado servicios oficiales en distintos cargos, en Puerto Rico, desde 10 de junio de 1901: que en 1 de febrero de 1926, solicitó el demandante su retiro voluntario basándose en la sección 8 de la Ley No. 104 de 1925, por tener más de 20 años de servicios: que en 14 de mayo de 1926 la Junta de Retiro, que es a la que envió su solicitud, dictó resolución denegando la petición de retiro del demandante, de cuya resolución pidió éste la reconsideración, que le fué negada: que en 1 de febrero de 1926 el demandante ocupaba el cargo de Registrador de la Propiedad de San Juan, Sección Primera, del que fué separado el día 4 del mismo mes de 1926: que el demandante, de acuerdo con la ley antes citada tiene derecho a la pensión que solicitó, y que la junta demandada no tiene facultades para tomar en consideración el hecho de que el demandante fuera separado

de su cargo, ni para hacer de ese hecho una condición limitativa o restrictiva del derecho a retiro y pensión. Y pidió se librara el auto condicional, como se hizo. Por la demandada compareció especialmente el Procurador General, el Auxiliar y el Sub-Procurador de Puerto Rico, y alegaron que la petición de *mandamus* no aduce hechos suficientes, y que el remedio que se solicita no procede, por tratarse de facultades discrecionales de la junta.

La Corte de Distrito de San Juan dictó sentencia en fecha 21 de octubre de 1926, declarando sin lugar la petición de *mandamus*. Y contra esa sentencia se interpuso la apelación que se encuentra ante nosotros para resolución.

El apelante Rafael Tirado Verrier ha señalado siete errores:

El primer señalamiento es como sigue:

"Primero.—Declarar sin lugar la solicitud de *mandamus* por el fundamento de que el demandante no era un funcionario del Gobierno Insular en la fecha en que la Junta demandada tuvo ante su consideración para resolución final, la petición de retiro del demandante."

El segundo señalamiento, que se argumenta conjuntamente con el primero, es así:

"Segundo.—Considerar que el demandante-apelante dejó de estar comprendido por la Ley No. 104 de 1925 al ser destituido."

En la opinión que se acompaña a la sentencia en este caso, el juez razona acerca de la ley de pensiones, y sostiene que ella se refiere a personas que sean funcionarios o empleados del Gobierno Insular. Y partiendo de ese punto, estima que el peticionario "no es en la actualidad empleado del Gobierno Insular, habiendo sido involuntariamente separado de su cargo, es decir, destituido." Estima que tampoco lo era en la fecha en que la Junta de Retiro tuvo ante su consideración, para resolución final, la solicitud de retiro del demandante.

Creemos que el juez de distrito ha cometido error en esa

apreciación, y la sentencia que sobre ella se funda es necesariamente errónea.

El artículo o sección 1 de la ley citada expresa con toda claridad a qué funcionarios y empleados se refiere la ley, en esta forma:

"Esta Ley comprenderá a todos los funcionarios o empleados en el Servicio Civil clasificado y no clasificado del Gobierno Insular de Puerto Rico, con excepción de los jueces del Tribunal Supremo, los catedráticos de la Universidad de Puerto Rico, los profesores de instrucción pública, los miembros de la Policía Insular y los empleados municipales."

No se encuentra el apelante Rafael Tirado Verrier entre los exceptuados en y por esa sección de la ley, por razón del cargo o empleo; y era, en 1 de febrero de 1926, un funcionario del Gobierno Insular de Puerto Rico; y por tanto, comprendido en la sección 1 citada. Está también comprendido en las primeras frases de la sección 9 de la misma ley, que son las que siguen:

"Si un funcionario o empleado de cuarenta o más años de edad a quien esta Ley sea aplicable, después de haber servido por un período total no menor de quince años . . ."

Este funcionario Rafael Tirado Verrier, para ejercer la mayoría de los cargos que ha ejercido, tiene que ser un abogado admitido al ejercicio de su profesión, en Puerto Rico, para lo que la ley vigente le exige, entre otras condiciones, ser mayor de 21 años. De la solicitud aparecen sus servicios por un período de cerca de 26 años; por lo que su edad, al presentar la petición no es menor de 46 a 47 años.

Veamos también la sección 8 de la misma ley, en la que se ha fundado el peticionario y apelante. Dice así:

"Sección 8.—Cualquier funcionario o empleado en servicio a quien sea aplicable esta Ley, y que haya prestado por lo menos veinte años de servicios computados de acuerdo con la sección 2 de esta Ley, tendrá derecho a retiro con una pensión vitalicia anual igual al dos por ciento (2) del promedio de sus sueldos o compensaciones básicas anuales durante los siete últimos años de servicios computables, multiplicado por el número de años de servicios."

De la creación de un derecho a pensión, no puede caber duda alguna. No se trata de una pensión que pueda, discrecionalmente, concederse o negarse por una junta o autoridad determinada. Se trata de un derecho que la ley crea, mediante la existencia de determinadas condiciones, y con respecto al que la Junta de Pensiones no tiene facultad discrecional alguna. O no se han dado las condiciones que la ley exige, y la junta no puede conceder o fijar la pensión: o se han dado, y la junta no tiene más misión que cumplir el mandato del estatuto, y fijar el montante de la pensión, de acuerdo con los preceptos reguladores de la materia. El mandato de la ley, desplaza toda discreción en este caso.

El razonamiento del juez sentenciador no es convincente. Sostiene que el que no es empleado o funcionario no tiene derecho a pensión. Y de aquí parte para deducir que el peticionario, en la fecha en que se reunió la Junta de Retiro, no era empleado o funcionario, y la junta no tenía facultades para aprobar la pensión. No es lógico imponer al peticionario las consecuencias de los retrasos en que para su reunión incurriera la junta. Sería justo que él sufriera las consecuencias de sus propios actos; pero no las de los ajenos.

Pero, aparte de no ser lógica esa manera de ver, no es legal tampoco.

La Ley de Retiro, ha expresado claramente los conceptos. Veamos cómo.

En la sección 3 de la ley hay un ''disponiéndose'' cuyo texto es como sigue:

''Disponiéndose, que no tendrán derecho a pensión alguna aquellas personas que no estuvieren en servicio activo en la fecha *en que soliciten su pensión.*'' (Bastardillas nuestras.)

La circunstancia de estar en servicio activo es importantísima, porque es determinante del derecho a pensión. ¿Pero, en servicio activo cuándo? ¿En el momento en que la junta se reúna para resolver acerca de la petición, como ha creído

el juez inferior? No: la ley ha sido clara en la expresión, y ha dicho:

"En la fecha en que soliciten su pensión."

Si en la fecha en que el apelante solicitó su pensión, esto es, en 1 de febrero de 1926, él estaba en servicio activo, y reunía las demás condiciones de ley, es evidente que no le alcanza la negación que se sostiene en el "disponiéndose" de la sección 3. La fecha en que el empleado o funcionario actúa, solicitando, no la en que la junta actúa, concediendo, o negando, es la que debe regir en este particular.

La corte inferior incurrió en los errores que por el apelante se señalan bajo los números primero y segundo.

Convenimos con el razonamiento del apelante en cuanto al tercer error que señala, o sea la indebida aplicación de la doctrina legal del caso *Tuck* v. *French*, 15 N. E. 188.

Para hacer aplicación de la jurisprudencia de cualquier Estado es medida prudente cerciorarse de si el estatuto que tal jurisprudencia aplica o interpreta es igual, o análogo, al que estamos interpretando. Nada en la opinión revela que exista tal paridad o analogía. Y estudiando el caso *People ex rel Tuck* v. *French et al.* encontramos ciertos aspectos que merecen citarse. Así, Mathew Tuck había faltado a sus deberes como policía y merecía un castigo—dice la decisión. Y añade:

"y con el fin claro de evadir un juicio y el consiguiente castigo, radicó una solicitud de retiro con pensión, alegando que había servido durante más de veinte años."

Parece que la comisión que actuaba en el caso de Tuck tenía facultades para la destitución de policías, y para la resolución en cuanto a pensiones, o para hacer pasar el nombre de los miembros de la policía, del servicio activo a la lista de pensiones. Además, Tuck impugnó la jurisdicción de esa comisión para juzgarle, alegando en el juicio que él no era un miembro de la policía.

No vemos que el caso sea de tal analogía al que resolvemos, que permita hacer aplicación de lo allí declarado.

El cuarto señalamiento de error se refiere a haber la corte inferior entendido que la sección 9 de la Ley No. 104, anula el derecho del apelante al retiro.

La sección 9, que se cita dice:

"Si un funcionario o empleado de cuarenta o más años de edad, a quien esta Ley sea aplicable, después de haber servido por un período total no menor de quince años y antes de tener derecho al retiro, fuere separado involuntariamente por cualquier motivo, excepto destitución, del servicio civil clasificado o no clasificado tendrá derecho a una pensión vitalicia anual igual al dos (2) por ciento del promedio de sus sueldos o compensaciones básicas anuales durante los siete últimos años de servicios computables, multiplicado por el número de años de servicios. Si un funcionario o empleado que recibe una pensión de acuerdo con las disposiciones de esta sección, retornase al servicio activo, su pensión cesará y él contribuirá otro vez al fondo de retiro de los funcionarios y empleados del Servicio Civil en la misma forma y en igual proporción en que lo hacía antes de ser separado del servicio. En la época de su subsiguiente retiro se le acreditarán los servicios prestados antes de su separación del Gobierno y los prestados después de haber vuelto al servicio activo."

¿Tiene esta sección 9 el efecto de destruir lo por la misma ley creado en la sección 8? Creemos que no es así.

La sección 9 se refiere a funcionarios y empleados que *antes de tener derecho al retiro* fueren separados del servicio por cualquier causa excepto destitución; y la separación a que se refiere es la involuntaria. La ley ha previsto en esta sección para casos que no son iguales al del apelante. Este ha pedido el retiro voluntario, cuando ya tenía derecho a tal retiro.

En lo que se refiere al derecho al retiro, extremo sometido bajo el señalamiento de error número Quinto, la sección 8 de la ley es perfectamente clara; y el error señalado se justifica por la lectura de dicha sección. El empleado o funcionario que ha prestado veinte años de servicio, y no se

halle en los casos de excepción que determina la ley, tiene derecho al retiro. No es una concesión, una gracia, o un favor, que puede, o no, hacerse. Es un derecho que la ley ha creado.

En realidad, resueltos los señalamientos de error de que antes se trata, queda resuelto el que aparece bajo el número Sexto, que lee como sigue:

"Ignorar en su resolución los preceptos fundamentales de la Ley No. 104, de 1925."

El séptimo señalamiento de error es como sigue:

"Denegar la solicitud de *mandamus*, si lo hizo sosteniendo la excepción alegada de que el recurso no procede porque la Junta demandada-apelada tiene facultades discrecionales en cuanto a concesión de pensiones."

La forma dubitativa en que se presenta este señalamiento, revelada por las palabras "si lo hizo," se justifica, hasta un cierto punto, por la excepción que se presentó por la demandada, y por la insistencia de ésta en descansar en esa proposición legal. En cuanto a la opinión y sentencia del juez de distrito, parece que la procedencia o improcedencia del auto de *mandamus* por lo que se refiere a la facultad discrecional, no preocupó al juez. En la opinión se dice lo que sigue:

"La controversia en este caso descansa sobre la interpretación que ha de darse a las secciones ocho y nueve de la Ley de Retiro del 2 de septiembre de 1925."

Y de ahí parte la opinión, tomando por base la interpretación de esas secciones. Pero las partes han traído a discusión esta materia, de las facultades discrecionales y es oportuno resolverla.

Por lo antes expresado en esta opinión, aparece claramente nuestra idea de que, dadas la precisión y claridad de los preceptos de la Ley de Retiro, la junta no actúa, en cuanto a las peticiones de retiro y pensión como la de este

caso, en uso de facultad discrecional alguna, sino que su actuación está regida por disposiciones terminantes de la ley. Pero aun si hubiera una facultad discrecional, tendríamos que decidir si ella cae, o no, bajo el régimen o intervención de los tribunales de justicia.

Los tribunales tienen, dentro de nuestro sistema, facultades discrecionales, que les permiten desenvolverse, en su misión, de una manera más eficaz, y más en acuerdo con la realización de los fines de la justicia, que lo que pudieran hacerlo bajo las reglas rígidas de una ley. Esas facultades han merecido siempre respeto, a excepción de los casos en que el abuso, la extralimitación haya hecho preciso la restricción. Pero, en ocasiones, las juntas, comités, y otros cuerpos administrativos tienen también facultades de esa clase. De aquí la diferencia entre la discreción judicial, y la discreción administrativa. Y como una regla se ha sostenido la de respetar esa discreción; pero respetarla, no siempre sino cuando la ley o la jurisprudencia lo ordenan o declaran así.

Nuestro estatuto (Ley estableciendo el auto de "Mandamus," marzo 12 de 1903, secciones 1328 a 1342 inclusives, Compilación 1911) ha definido el auto de *mandamus* así:

"El auto de *mandamus* es un auto altamente privilegiado dictado por el Tribunal Supremo de la Isla, o por las Cortes de Distrito de Puerto Rico, a nombre del Pueblo de Puerto Rico, y dirigido a alguna persona o personas naturales, a una corporación o a un tribunal judicial de inferior categoría, dentro de su jurisdicción, requiriéndoles para el cumplimiento de algún acto que en dicho auto se exprese y que esté dentro de sus atribuciones o deberes. Dicho auto no confiere nueva autoridad y la parte a quien obliga deberá tener la facultad de poder cumplirlo."

Y en la sección siguiente se establece lo que sigue:

"El auto de *mandamus* podrá dictarse por el Tribunal Supremo o por las cortes de Distrito o por cualquier de sus magistrados o jueces cuando se hallen en el ejercicio de sus funciones o en sus oficinas, y se dirigirá a cualquier tribunal inferior, corporación, junta

o persona obligada al cumplimiento de un acto que la ley particularmente ordene como un deber resultante de un empleo, cargo o función pública; pero aun cuando puede requerir a un tribunal inferior o a cualquiera de sus jueces para que, adopte este criterio, o para que proceda al desempeño de cualquiera de sus funciones, el auto no puede tener dominio sobre la discreción judicial."

Como se nota, el estatuto, que puede exceptuar o salvar, en general, la discreción, ya de las cortes y jueces, ya de las personas o corporaciones, no hace excepción más que en lo que toca a la *discreción judicial,* a los *tribunales inferiores* y a *cualquiera de sus jueces.* La legislatura quiso hacer expresamente esa salvedad, y así la trajo a la ley. Si hubiera querido exceptuar de la intervención las facultades discrecionales de cualquiera otra entidad lo hubiera hecho.

En la jurisprudencia del Estado de Washington, encontramos un caso *State ex rel Gillete* v. *Clausen,* 87 Pac. 498, que se ha señalado como distinto y especial (véase 38 Corpus Juris, pág. 504, nota al párrafo 71), y en el que la doctrina se enuncia así:

"Un procedimiento de *mandamus* contra un funcionario, entablado de conformidad con el estatuto, participa de todas las características de una acción civil y por tanto es impertinente si el deber que se trata de hacer cumplir es ministerial o es uno sobre el cual se exige que el funcionario ejerza su criterio o discreción."

En la opinión en este caso que citamos se reproduce la doctrina jurídica del caso *Brown* v. *McQuade,* 36 Wash. 579, 79 Pac. 207, en el que se sostiene que bajo la práctica de aquel Estado el *mandamus* no es otra cosa que una de las formas de procedimiento creada para la resolución de derechos y el remedio de agravios (*wrongs*), y que tiene todos los elementos de una acción civil.

Si el estatuto de Puerto Rico no ha privado a los tribunales de intervenir en cuanto a personas o entidades corporativas, aun en los casos en que éstas ejercitan facultades discrecionales, y sólo ha hecho reserva en cuanto a la discreción judicial, no podemos extender la reserva y la res-

tricción más allá de lo que expresamente marca el mismo estatuto. La interpretación de leyes que tienen evidente o implícito carácter restrictivo, debe ser estricta y restringida.

En ese sentido, la corte inferior erró, si quiso sostener la excepción.

Con estos fundamentos procede la revocación que se solicita.

*Debe revocarse la sentencia apelada, y dictarse otra declarando con lugar las peticiones del recurrente en mandamus.*

Los Jueces Señores Presidente del Toro y Asociado Hutchison, disintieron.